PEOPLE v LEE

1. Criminal Law—Attorney and Client—Custody—Photographs—Showup.

   The rule, that subject to certain exceptions, identification by photograph should not be used where the accused is in custody and that where there is a legitimate reason to use photographs for identification of an in-custody accused, he has the right to counsel as much as he would for corporeal identification procedures, attaches with custody; that rule should not be extended to the pre-custody, pre-questioning, mere suspicion phase as it is not feasible to require appointment of counsel in cases of pre-custody photographic showups where there is no detention of the defendant.

2. Criminal Law—Photographs—Identification—Showup.

   An improper photographic identification procedure may bias the case against the accused because the procedure may be so suggestive as to identify a picture in the witness's mind with the defendant, or because of the psychological compulsion to stick by a previous identification; therefore, it is important that there be safeguards to protect the innocent from misidentification and the showup procedures must minimize suggestiveness for viewers whenever possible.

3. Criminal Law—Identification—Photographs.

   The fairness of the identification procedure must be evaluated in the light of the totality of the circumstances and the test is the degree of suggestion inherent in the manner in which the

References for Points in Headnotes

[1–4] 21 Am Jur 2d, Criminal Law §§ 368, 369.

[5, 6] 53 Am Jur, Trial §§ 1020, 1025, 1027.

[7–9] 21 Am Jur 2d, Criminal Law § 303.

[10–12] 53 Am Jur, Trial § 658.

[13] 29 Am Jur 2d, Evidence § 371 *et seq.*

Admissibility of evidence of lineup identification as affected by allegedly suggestive lineup procedures, 39 ALR3d 487.

[14] 41 Am Jur 2d, Indictments and Informations §§ 56, 60.

[15] 5 Am Jur 2d, Appeal and Error § 702 *et seq.*

suspect's photograph is presented to the witness for identification.

4. CRIMINAL LAW—SUGGESTIVENESS—IDENTIFICATION—PHOTOGRAPHS
—MOTION TO SUPPRESS—EVIDENTIARY HEARING—RECORD.

Michigan Supreme Court does not examine the question of suggestiveness in the manner in which a suspect's photograph is presented to a witness for identification because there was no motion at trial to suppress the photographic identification testimony, nor evidentiary hearing on this matter to give the Court a record on which to make a judgment.

5. CRIMINAL LAW—RECORD—WAIVER—CONSTITUTIONAL LAW.

Recordation of a complete trial has never been elevated to a basic constitutional right, such as the right to all the transcript that has been recorded or to counsel, so as to constitutionally permit waiver only by the knowing concurrence of the defendant himself on the record.

6. CRIMINAL LAW—RECORD—STATUTES—COURT RULES—WAIVER—ARGUMENTS.

Under the Michigan statutory and court rule scheme, there was a valid waiver of recording the remainder of the closing arguments where there was agreement of defense attorney, the prosecutor and the trial judge; therefore, no error occurred, although the better trial law practice is to record all final arguments (MCLA 600.1111; GCR 1963, 915.2).

7. CRIMINAL LAW—PRESENTENCE REPORT—STATUTES—DUE PROCESS.

Under the statutory language, providing for inquiry into the defendant's antecedents, character, and circumstances, there are no formal limitations on the contents of the presentence report, but there are limitations dictated by due process (MCLA 711.14).

8. CRIMINAL LAW—PRESENTENCE REPORT—OTHER CRIMES—SENTENCES
—APPEAL AND ERROR.

Michigan Supreme Court will not sanction a judge's making an assumption of guilt of other crimes on the basis of the presentence report; this is why courts reserve the authority to modify sentences where inappropriate considerations appear to have improperly affected the sentence.

9. CRIMINAL LAW—PUNISHMENT—SENTENCES—DISCRETION—PRESENTENCE REPORT.

Trial judge, in setting punishment, properly considered information in the presentence report prepared by the probation officer;

the question of sentencing is properly a matter for the exercise of judicial discretion, and an informed exercise of that discretion requires an individualized factual basis, such as is provided by the presentence report.

10. CRIMINAL LAW—INSTRUCTIONS—ALIBI—APPEAL AND ERROR—PRE-SERVING ISSUES—FAILURE TO OBJECT.

Trial judge should have instructed that an alibi defense is as legitimate as any other defense "if not disproven" instead of "if proven"; however, defendant's trial attorney did not object to the instruction before the jury retired to consider its verdict; therefore, although the Michigan Supreme Court disapproves of the instruction as given, there was no reversible error since the issue was not preserved.

11. CRIMINAL LAW—ALIBI—TESTIMONY—REASONABLE DOUBT.

Testimony in support of an alibi need accomplish no more than raise a reasonable doubt of defendant's presence at the time and place of the commission of the crime charged.

12. ROBBERY—EVIDENCE—CREDIBILITY—ALIBI—REASONABLE DOUBT.

There was sufficient evidence in the record upon which the jury could reasonably have based its judgment of guilt where the issue present was one of credibility, the jury understood that its task was to determine whether the alibi testimony created sufficient doubt that it could not find the defendant guilty of the robbery charged "beyond a reasonable doubt", and it elected to believe the testimony of the complaining witness.

13. CRIMINAL LAW—WITNESSES—LINEUP—HEARSAY.

A witness's testimony that she had identified the wrong man at the corporeal lineup because she had been frightened by alleged threats by her sister-in-law is not barred by the hearsay rule; the hearsay rule proscribes evidence of statements made by another offered to prove the facts asserted therein but where the alleged statements of the sister-in-law were offered to show, circumstantially, the effect of the communicated statement on the hearer, the complaining witness, then it was not offered for a hearsay purpose because its value does not depend upon the truth of the statement.

14. CRIMINAL LAW—HEARSAY—WITNESSES—INDORSEMENT OF WITNESS —SUBPOENA—APPEAL AND ERROR.

The prosecution was not required to produce and indorse as a witness an out-of-court declarant, since the statements of that declarant were not barred by the hearsay rule; defendant was

not denied the right to call, under the court's subpoena power if necessary, witnesses on his own behalf and he had the right to call to the stand, as a hostile witness, and confront that declarant face to face; he did not choose to do so and therefore he will not now be heard on appeal to complain that his trial strategy was not effective (MCLA 600.1455).

15. CRIMINAL LAW—APPEAL AND ERROR—STATUTES—CONSTITUTIONAL LAW.

     A defendant convicted of a crime is afforded on appeal an opportunity to protect himself against infringement of his statutory or constitutional rights but he is not entitled to retry his case on appeal.

Appeal from Court of Appeals, Division 3, T. M. Burns, P. J., and Holbrook and Van Valkenburg, JJ., affirming Calhoun, Ronald M. Ryan, J. Submitted January 11, 1974. (No. 2 January Term 1974, Docket No. 54,632.) Decided May 21, 1974. Rehearing denied June 25, 1974.

Doursey Lee was convicted of armed robbery. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Stanley Everett,* Prosecuting Attorney, and *Noel G. Petersen,* Chief Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Roger L. Wotila* and *John A. Lydick),* for defendant on appeal.

WILLIAMS, J. Defendant's appeal opens a veritable Pandora's box of issues, three of which are of significant importance:

1. Does a pre-custody photographic showup require counsel where defendant is a possible suspect?

2. Can the trial court excuse recordation of final

argument where both prosecutor and defense counsel agree?

3. May a presentence report include pending charges and may the trial court read or consider them?

Two important but less significant issues because they do not raise novel questions are whether the alibi instruction was proper and whether the complaining witness could testify as to an alleged threat without the alleged threatener also being called as a witness.

On no issue do we find reversible error.

## I —FACTS AND PROCEEDINGS

On April 14, 1971, a jury found defendant Lee guilty of the armed robbery of a dry-cleaning store, an offense "punishable by imprisonment in the state prison for life or for any term of years." MCLA 750.529; MSA 28.797.

The defense at trial was founded on the testimony of two alibi witnesses, defendant's wife and mother. The prosecution's case rested on the testimony of three witnesses: the counter clerk, Mrs. Crandall, who was allegedly confronted by the robber and forced at gun point to hand over approximately $150 from the cash register; and two other witnesses who had observed the suspect but not the robbery. Mrs. Crandall did not make an identification from a photo display shown two hours after the robbery, or from another display shown the next day. Lee's photograph was included in a third eight-photo display shown Mrs. Crandall six days after the robbery, after a police sergeant had observed the similarity of Lee's clothing to Mrs. Crandall's description of the robber's clothing. She identified the photograph of Lee as

the man she thought had robbed her. Following that identification, Lee was formally arrested.

Subsequent to his arrest, a corporeal lineup was held at which the defendant was represented by court-appointed counsel[1] and Mrs. Crandall identified another man 6′ 3″ tall as the robber (Lee is 5′ 6″ tall), although she had previously described the robber as 5′ 6″ to 5′ 7″ tall! Mrs. Crandall positively identified Lee at his preliminary examination and at his trial. She explained, on redirect examination by the prosecutor at trial, that her misidentification at the corporeal lineup was due to fear and nervousness. Lee was sentenced to 6 to 20 years imprisonment. The Court of Appeals affirmed Lee's conviction in an unpublished memorandum opinion.

## II —PRE-CUSTODY PHOTOGRAPHIC LINEUP

Doursey Lee was arrested after the complaining witness, Mrs. Crandall, identified his photograph from an eight-photo display shown her six days after the robbery. The investigating officers regarded Lee as a possible suspect on the basis of the similarity of his clothing to that reportedly worn by the robber. However, it would be questionable that such suspicion would be sufficient probable cause for an arrest warrant. Furthermore, Lee had not yet been approached or questioned by the police, and *was not in custody* when the photographic identification was made.

---

[1] The presence of counsel at the corporeal lineup is not documented in the court record by entry of the police department showup report, which generally contains descriptions of all the suspects and notation of any identification made by the witness, *and is signed by the attorney present.* However, the testimony at the preliminary examination indicates that counsel was in fact present at this "critical stage". *See United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967); *Gilbert v California,* 388 US 263; 87 S Ct 1951; 18 L Ed 2d 1178 (1967).

Lee argues that the counselless photographic showup violated his Sixth Amendment right to counsel and so tainted the complaining witness' later identification of him at his preliminary examination and trial as to require reversal of his conviction. He contends that his right to counsel had attached by the time the police showed a "mug shot" of him to the complaining witness. He argues that since the police investigation had "focused" suspicion on him on the basis of the clothes similarity, the uncounselled photographic display was improper because its purpose was to build a case against him by eliciting identification evidence, and not merely to extinguish a case against an innocent bystander.

This Court has not previously ruled on the right to counsel at pre-custody photographic showups. In our recent decision in *People v [Franklin] Anderson,* 389 Mich 155, 186–187; 205 NW2d 461 (1973) we stated that:

"1. Subject to certain exceptions, identification by photograph should not be used where the accused is in custody.
"2. Where there is a legitimate reason to use photographs for identification of an in-custody accused, he has the right to counsel as much as he would for corporeal identification procedures."

Clearly, the instant case does not come within *Anderson's* proscription of identification by photograph since the conclusions drawn in that case presume custody of the defendant. In *People v Jackson,* 391 Mich 323, 337; 217 NW2d 22 (1974), we adhered to our *Anderson* approach after consideration of the recent United States Supreme Court decision in *United States v Ash,*[2] 413 US 300; 93 S Ct 2568; 37 L Ed 2d 619 (1973).

---

[2] The United States Supreme Court took a more restrictive view of

In the companion case of *People v [James] Anderson,* 391 Mich 419, 422; 216 NW2d 780 (1974), we stated that:

"It is the fact of custody that requires implementation of the *Franklin Anderson* rule * * * ."

The *Franklin Anderson* rule attaches with custody. Compare *People v Cesarz,* 44 Ill 2d 180; 255 NE2d 1, 4 (1969); *United States v Zeiler,* 427 F2d 1305, 1307 (CA 3, 1970); *State v Keel,* 5 NC App 330, 335–336; 168 SE2d 465, 468–469 (1969). Defense counsel's argument that the right to counsel attaches once "an investigation has focused" on a particular suspect is an inaccurate one, insofar as it is supposed to refer to "pre-custody" investigations. The cases to which the defendant refers are *in*-custody not *pre*-custody cases.

We decline to extend the reasoning of *Franklin Anderson* to the pre-custody, pre-questioning, mere suspicion phase that was evidenced here. It is not feasible to require appointment of counsel in cases of pre-custody photographic showups where there is no detention of the defendant since under such a rule each photograph arguably depicts a suspect and therefore each person whose photograph appears in the photographic display, or perhaps even the "mug book" would require the representation of counsel. That would be impossible and absurd.

Even though we do not require the presence of counsel at the pre-custody photographic identification stage, we recognize that an improper photo-

the right to counsel at photographic identifications in *United States v Ash* than our position in *Franklin Anderson. Ash* decided that the Sixth Amendment does not require that an accused have counsel present whenever the police conduct a post-indictment photographic display, containing a picture of the accused, for the purpose of allowing a witness to attempt an identification of the offender.

graphic identification procedure may bias the case against the accused—because the procedure may be so suggestive as to identify a picture in the witness's mind with the defendant, or because of the psychological compulsion to stick by a previous identification. See *People v [Franklin] Anderson,* 389 Mich 155, 215–220; P. Wall, *Eye-Witness Identification in Criminal Cases,* 66–89 (1965, 2d printing 1971); Comment, *Criminal Procedure—Photo Identifications,* 43 NYU L Rev 1019 (1968). Therefore, it is important that there be safeguards to protect the innocent from misidentification. The showup procedures must minimize suggestiveness for viewers whenever possible.

The fairness of the identification procedure must be evaluated in the light of the totality of the circumstances. The test is the degree of suggestion inherent in the manner in which the suspect's photograph is presented to the witness for identification. See *United States v Zeiler, supra,* 1308; *State v Rowe,* 77 Wash 2d 955, 956–957; 468 P2d 1000, 1001–1002 (1970); and *People v Eubank,* 46 Ill 2d 383, 384–388; 263 NE2d 869, 871–873 (1970). The United States Supreme Court stated in *Simmons v United States,* 390 US 377, 384; 88 S Ct 967; 19 L Ed 2d 1247 (1968), that:

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was *so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."* (Emphasis added.)

We do not examine the question of suggestiveness because there was no motion at trial to suppress the photographic identification testimony,

nor evidentiary hearing on this matter to give us a record on which to make a judgment.

## III —WAIVER OF RECORDATION OF FINAL ARGUMENTS

Error is assigned to the waiver of recordation of the final arguments of counsel. After the prosecutor had apparently argued a substantial portion of his closing summation to the jury, the recording of further arguments was excused by the trial judge with the agreement by stipulation of the prosecutor and defense attorney.[3]

MCLA 600.1111; MSA 27A.1111 provides:

"The stenographer shall perform the duties assigned by the rules of the supreme court, and by the court to which he is appointed, under the supervision of a judge of the court to which he is appointed."

The pertinent court rule, GCR 1963, 915.2, provides in part:

".2 Attendance at Court; Taking Testimony
"(1) The stenographer shall attend the court under

---

[3] Ten pages of the prosecutor's summation were transcribed. The State Appellate Defender asserts that the trial transcript "gives a verbatim record of what is apparently only a portion of the prosecution's closing argument", but our examination of the record indicates that it is not entirely clear from the transcript itself that the prosecutor had not concluded his final argument in chief before the stenographer was excused from recording further arguments. There is a ring of finality to the prosecutor's concluding statement of the portion that is transcribed: "I am sure you will find beyond a reasonable doubt that Doursey Lee is guilty of armed robbery." By that point, the prosecutor had reviewed for the jury the testimony of each of the eight witnesses at the trial. It is clear from the transcript that the prosecutor's closing rebuttal at least was not recorded since at one point where the defense attorney objects to the prosecutor's recollection of the evidence, the statement and the attorney's request to approach the bench were recorded, and following that colloquy the transcript reads: "(continues with rebuttal argument)."

the direction of the judge thereof, and take a verbatim record of the following:

* * *

"(c) in jury trials, the opening statements and final arguments;

* * *

"(2) The stenographer who commences to record a case shall take the record of the entire case unless he shows good cause for failure to do so, or is otherwise excused by the trial judge."[4]

Lee contends that the right to a complete trial transcript is a fundamental constitutional right under Const 1963, art 1, § 20,[5] and under the federally guaranteed rights to equal protection and due process of law. Therefore, Lee argues that the right to a full and complete trial transcript cannot be waived by the defense lawyer except with the knowing concurrence of the defendant himself; and he maintains that he did not knowingly concur in the waiver of further recordation.

Lee relies on *People v Cross,* 30 Mich App 326; 186 NW2d 398 (1971), *aff'd* 386 Mich 237; 191 NW2d 321 (1971), and the United States Supreme Court cases cited therein including *Griffin v Illinois,* 351 US 12; 76 S Ct 585; 100 L Ed 891; 55 ALR2d 1055 (1956); *reh den* 351 US 958; 76 S Ct 844; 100 L Ed 1480 (1956), which established the right of an indigent to be furnished with a transcript at public expense on appeal. The Michigan courts and the United States Supreme Court, re-

---

[4] Waiver of recording of closing arguments is apparently not an uncommon practice in Michigan's trial courts. See footnote 6 for recent appeals raising the issue.

[5] Article 1, § 20 of the Michigan Constitution of 1963 provides:

"In every criminal prosecution, the accused shall have the right * * * to have an appeal as a matter of right; and in courts of record, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal."

spectively, found a denial of equal protection of the laws in *Cross* and *Griffin* because the indigent defendants were denied free transcript material on appeal that would have been available to a monied defendant.

The authority relied on by Lee, however, is not in point. The case at bar is entirely distinguishable from *Cross* and *Griffin,* since it raises neither a question of denial of equal access to the courts, nor denial of a transcript, but involves instead a question not considered by those cases: whether counsel could waive recording of closing arguments. Furthermore, unlike *Cross* and *Griffin,* Lee was not denied a right that would have been available to a monied defendant since, obviously, an unrecorded transaction can no more be reincarnated by a defendant with financial means than by an indigent.

Defendant also relies on an analogy to the Federal court reporter statute, 28 USC 753(b)(1), as construed by *Hardy v United States,* 375 US 277; 84 S Ct 424; 11 L Ed 2d 331 (1964), *Stephens v United States,* 289 F2d 308 (CA 5, 1961), *Fowler v United States,* 310 F2d 66 (CA 5, 1962), and *United States v Upshaw,* 448 F2d 1218 (CA 5, 1971). They hold that 28 USC 753(b)(1) requires "an entire transcript" *(Hardy,* 375 US 277, 282), which would include the final arguments.

However, speaking for the court in *Hardy,* Justice Douglas stated:

"We deal here only with the statutory scheme and do not reach consideration of constitutional requirements." (375 US 277, 282.)

This same point was noted in *Upshaw,* 448 F2d 1218, 1223.

None of the cited opinions considered the ques-

tion of waiver by both defense and prosecution counsel as well as approval by the trial judge.

As a consequence, since availability of "an entire transcript" in *Hardy* et al. was recognized as a statutory and not a constitutional matter, and since in none of these cases was there consideration of waiver by both counsel and approval of the court, we believe those cases are distinguishable from the instant case, whatever the similarity or dissimilarity of the Federal statutory scheme and the Michigan statutory and court rule scheme.

Lee argues further that this Court stated in *People v McKinley,* 383 Mich 529, 536; 176 NW2d 406 (1970), that it "indulges every reasonable presumption against waiver of constitutional rights", and that waiver of a constitutional right must depend on the considered choice of the defendant and may not be made by his lawyer without the defendant's participation. But *McKinley* is also inapposite to the case at bar since recordation of a complete trial has never been elevated to a basic constitutional right—such as the right to all the transcript that has been recorded or to counsel, the right at issue in *McKinley*—so as to constitutionally permit waiver only by the knowing concurrence of the defendant himself on the record.

We believe there was a valid waiver under the Michigan statutory and court rule scheme where there was agreement of the defense attorney, the prosecutor, and the trial judge. Therefore, no error occurred, although in our opinion the better trial practice is to record all final arguments.

Waiver of recording of closing arguments is apparently not an uncommon practice in Michigan's trial courts, judging from a number of recent appeals which have raised the issue.[6] If this failure

---

[6] *See,* for example, *People v Szczytko,* 390 Mich 278, 298; 212 NW2d

to record the entire record constitutes unfairness, then, the remedy lies in amendment of the statutory and court rule scheme, to make verbatim records of the *entire* proceedings at trial mandatory in all criminal trials. Without expressing an opinion on the matter we hereby announce our intention to consider whether such an amendment to the court rule would be in order.

## IV —CONSIDERATION AT SENTENCING OF OTHER PENDING CRIMINAL CHARGES

Lee asserts that he is "entitled to resentencing (before a different judge)" because the sentencing judge improperly considered two pending grand jury indictments against him for armed robbery and conspiracy to commit armed robbery, which were disclosed in the presentence report. We will quote the sentencing transcript verbatim because this is a case of first impression in Michigan and inasmuch as the judge uses the report, it is critical in his determination of sentencing.

"*The Court:* The record may show that Doursey Lee is before the Court for sentence with his attorney, Mr. Shelton Penn. And, Mr. Lee, is there anything you want to say to the Court before sentence is passed?

"*The Defendant:* No, sir, nothing more than I am innocent, I am sorry that it did happen.

"*The Court:* I noticed from the presentence investigation report that you still maintain that you are innocent.

"*The Defendant:* Yes.

"*The Court:* And I assume that you claim that the woman in the drive-in cleaning establishment was wrong in her identification. Nevertheless, all of that

211 (1973) (dissenting opinion); and *People v Merriweather,* 50 Mich App 751, 753; 213 NW2d 756 (1973), leave to appeal den 391 Mich 809.

matter was reviewed by the jury and they found you guilty of armed robbery and so the Court has to take the verdict of the jury as being evidence of the fact that the jury found that you were guilty of armed robbery. Armed robbery, of course, is a terribly serious offense subject to life imprisonment. It appears that you had quite a bit of difficulty with the law in December of 1959, you were given three years probation, with the first six months in jail, for the offense of breaking and entering, but the probation was revoked about six months later when, on July 8, 1960, you were convicted of robbery, unarmed, and sentenced to the state prison for three to fifteen years. Then you were paroled and finally discharged on June 19, 1965. Now at the present time you are serving a sentence of one year in county jail for the conviction of carrying a concealed weapon which occurred on August 26, 1970. *And, in addition* to that conviction, *there are two prosecutions pending against you resulting from the grand jury indictment, as you know. One is for conspiring to rob and the other is on armed robbery.* The record shows that when you were in school you had difficulty and you dropped out while attending the eighth grade classes at the age of sixteen. You tried to do something after leaving school. You had several jobs; you also worked for the Grand Trunk Railroad in June and July of 1970 and you worked while you were in prison as a sewing machine operator and you never learned to capitalize on that experience. You are twenty-nine years old and, of course, you are the product of a broken home. You have never been able to hold a job very long. It appears from the presentence investigation report that for some reason you acted impulsively and at the time you probably did not realize the consequences of what you were doing and you get an idea in your head and go ahead and do it without thinking. Now you have served about six months, have you, on carrying a concealed weapon?

"*The Defendant:* Yes.

"*The Court:* You were in jail, Mr. Penn says, from some time in October until a date in January on this particular charge before you were released on bond.

"*The Defendant:* No, I was released on bond Septem-

ber. I was arrested for CCW in August and released on bond September 24th.

"*Mr. Penn:* You were brought back in October on this charge.

"*The Court:* And then you served from October until a day in January, until you had a trial.

"*The Defendant:* Yes.

"*The Court:* The trial was in April.

"*Mr. Penn:* The concealed weapons charge was in February.

"*The Court:* He was in jail on carrying concealed weapons.

"*Mr. Penn:* No, Your Honor, he could have made bond on concealed weapons. What I am saying he was in jail for failure to make bond on armed robbery and should be given credit from October to February on this charge.

"*The Court:* October to February because he could have made bond on the other case, is that correct?

"*Mr. Penn:* Yes, he had been here on bond on the other case, but he was being held on this case.

"*The Court: Well, taking everything into consideration, it is the sentence of this court that you serve* a term at Michigan Corrections Commission for *not less than six years nor more than twenty years* and you will be given credit for the time that you served in jail from October, 1970 to the date in February of 1971. All right." (Emphasis added.)

Lee did not object to the reference to the pending charges at the time of the sentencing hearing, nor does he now seek to assail the accuracy of those charges. Therefore, Lee's challenge is to the inclusion of pending charges in the presentence report per se.

The emphasis of the penal code is on the crime rather than the criminal in the sense that the maximum and minimum limits of sentences are based on the gravity of the act committed. This is balanced, however, by the statutory requirement

that the probation officer file the presentence report. MCLA 771.14; MSA 28.1144 provides in pertinent part:

"Sec. 14. Before sentencing any person charged with a felony * * * *the probation officer shall inquire into the antecedents, character and circumstances of such person* or persons, and shall report thereon in writing to such court or magistrate. If such person is committed to a state penal institution or the Detroit house of correction, a copy of such pre-sentence investigation report and if a psychopathic or psychiatric examination of such person has been made for the court, a copy of the report thereon shall accompany the commitment papers * * * ." (Emphasis added.)

Moreover, GCR 1963, 785 was amended after Lee's May 19, 1971, sentencing hearing to require disclosure of the presentence report to the defendant's lawyer and the defendant prior to sentencing. We cannot determine on this record whether the defendant and/or his attorney had an opportunity to review and prepare a rebuttal to allegations in the report prior to the sentencing hearing. But there is no dispute that the defendant was apprised at the hearing of its contents, including the enumeration of pending charges, since the judge recited the contents of the report orally while reviewing it prior to sentencing.

Historically, separate evidentiary rules have been fashioned for the trial and sentencing procedures. Evidence admitted at trial to determine whether the defendant is guilty of specific criminal conduct is largely limited by evidentiary rules to first-hand or verifiable testimony directly related to the offense charged. But under Michigan's indeterminate sentencing law, MCLA 769.8; MSA 28.1080; the responsibility for setting the limits of

sentence between the statutory minimum and
maximum rests squarely on the sentencing judge.
At the sentencing hearing, after the issue of guilt
has been decided, full information regarding the
defendant's character, background, and criminal
record have generally been deemed admissible
under concepts of individualizing punishment.[7]
The presentence report, mandatory for felony
cases in Michigan since 1931,[8] allows the court to
make an informed judgment as to possibilities for
rehabilitation, and to effectively utilize sentencing
alternatives.

The presentence report has been widely re-
garded as an effective method of supplying infor-
mation essential to an informed sentencing deci-
sion. See *Sentencing Alternatives and Procedures,*
ABA Project on Minimum Standards for Criminal
Justice, § 4.1, p 201; *Williams v New York,* 337 US
241, 249–250; 69 S Ct 1079; 93 L Ed 1337 (1949);
*Gregg v United States,* 394 US 489, 492; 89 S Ct
1134; 22 L Ed 2d 442 (1969).

Moreover, a number of other jurisdictions which
have considered the issue have held that the sen-
tencing judge may consider other offenses enumer-
ated in the presentence report, at least where the
defendant does not challenge information in the
report. See *Jones v United States,* 113 US App DC
233, 235; 307 F2d 190, 192 (1962); *Neely v State,* 47
Wis 2d 330; 177 NW2d 79 (1970); *State v Ferbert,*
— NH —; 306 A2d 202, 204 (1973); *Court's right,
in imposing sentence, to hear evidence of, or to
consider, other offenses committed by defendant,*

---

[7] *See People v McFarlin,* 389 Mich 557, 574; 208 NW2d 504 (1973);
*People v Grimmett,* 388 Mich 590, 608; 202 NW2d 278 (1972), *over-
ruled on other grnds* in *People v White,* 390 Mich 245, 258; 212 NW2d
222 (1973).

[8] 1931 PA 308; the language adopted in 1931 is presently stated in
MCLA 771.14; MSA 28.1144.

96 ALR2d 768, and the cases cited therein; 1 Wigmore, Evidence (3d ed), § 4(8), p 25.

The argument can be made that the sentencing determination should be made in a sterile vacuum, that the judge should not know of other pending charges because, first, they have not been proven, and second, knowing of them undoubtedly influences his determination. On the other hand, however, it is obvious that in cases where the judge knows that plea bargaining has taken place, he knows of the pending charges already. The practice of recorder's court is, reportedly, to assign all concurrently pending charges against a particular defendant to one judge for trial, and in smaller communities the judge's knowledge of the background of previously convicted defendants may be inescapable.

Therefore, it would be burying our heads in the sand to suppose that judges would not in most instances hear about the charges pending against a defendant in one way or another, and, consequently, any rule to proscribe consideration of the information would be fatuous. The realistic and honest policy is to recognize that the judges will have this information in one way or another and to provide the defendant the opportunity at his instance to challenge or explain such pending charges as best he can, if he deems it advisable. Compare *People v McFarlin,* 389 Mich 557, 572; 208 NW2d 504 (1973).

Under the statutory language, providing for inquiry into the defendant's "antecedents, character, and circumstances", there are no formal limitations on the contents of the presentence report, but there are limitations dictated by due process. In *Townsend v Burke,* 334 US 736, 740; 68 S Ct 1252; 92 L Ed 1690 (1948), the United States

Supreme Court found that the defendant had been "overreached by the prosecution's submission of misinformation to the court or was prejudiced by the court's own misreading of the record" where the defendant was uncounselled at the sentencing hearing and the sentencing judge considered a prior charge that actually had been dismissed and two charges of which he had been found not guilty. In *United States v Tucker,* 404 US 443, 447; 92 S Ct 589; 30 L Ed 2d 592 (1972) where evidence of three prior felony convictions which were constitutionally invalid due to lack of counsel was considered at sentencing, the United States Supreme Court remanded for resentencing because the "sentence [was] founded at least in part upon misinformation of constitutional magnitude."

In the instant case, the defendant had counsel at the sentencing hearing, and does not allege that the charges enumerated in the presentence report are constitutionally infirm.

There is no indication that defendant Lee was overreached by the prosecutor or by submission of misinformation to the court by the probation officer. Neither Lee nor his attorney challenged or disputed the accuracy of adverse information regarding defendant's background, employment record, prior felony convictions, or pending charges at the sentencing hearing. Lee did not ask the judge to exercise his discretion to exclude reference to the pending charges. The judge was not asked to disregard any of the allegations in the report, nor did the defendant or his attorney seek an opportunity to discredit the report by cross-examination or otherwise. See *Williams v New York,* 337 US 241, 244.

In the instant case, the pending charges are referrable to an official record, the grand jury

indictment, and are not mere rumors or vague allegations such as were disapproved in *People v Zachery Davis,* 41 Mich App 683, 686–692; 200 NW2d 779 (1972). Lee was sentenced following a formal sentencing hearing before the trial judge. He was represented by counsel at the time of sentencing and was given an opportunity to make a statement on his own behalf. Lee maintained that he was innocent of the crime charged. His attorney also made arguments on Lee's behalf, largely on the question of jail credit time.

Moreover, there is no evidence that the court drew false inferences from the presentence report, as in *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972). Grimmett's case was remanded for resentencing on the assault charged, where the trial judge made an independent finding of defendant's guilt on another charge, in stating at the sentencing hearing that "while [Grimmett] was tried for the shooting of Mr. Kubon, he is certainly the same person who murdered the other grocer * * * at the same time." We will not sanction a judge's making an assumption of guilt of other crimes on the basis of the presentence report. This is why courts reserve the authority to modify sentences where inappropriate considerations appear to have improperly affected the sentence.

This is also the reason why it is useful for the sentencing judge to indicate on the record the extent to which he relied on specific information contained in the presentence report in levying sentence. In the case at bar, the judge placed his consideration of the pending charges on record by reviewing the presentence report orally at the sentencing hearing. It appears from the record that no emphasis was placed on the pending charges.

The information in the presentence report may have resulted in mitigation of sentence in the case at bar. The sentencing judge considered the fact that the defendant "acted impulsively" in committing the armed robbery charged and "probably did not realize the consequences of what [he was] doing" and sentenced the defendant to 6 to 20 years imprisonment on his fourth felony conviction, whereas he might have sentenced defendant to "life or for any term of years."

Therefore, we find that in setting punishment, the trial judge properly considered information in the presentence report prepared by the probation officer. We do not believe it would be a wise policy to restrict the sentencing judge to the information admissible in open court alone. The question of sentencing is properly a matter for the exercise of judicial discretion, and an informed exercise of that discretion requires an individualized factual basis, such as is provided by the presentence report. Without knowledge of a convicted defendant's past life, employment record, criminal record, psychiatric history, if any, and "mental and moral propensities", *Williams v New York,* 337 US 241, 245, it would be difficult for the sentencing judge to free himself in his determination of sentence from the nature of the offense charged and the caliber of the defense at trial.

The presentence report not only aids the sentencing court in determining punishment, but in bringing relevant information regarding the character and antecedents of the defendant to the attention of the sentencing judge is of possible advantage to the defendant as well, since it shifts the emphasis of the sentencing proceedings from the specific nature of the crime committed to the individual convicted of the crime.

## V —ALIBI INSTRUCTION

Lee's defense at trial was premised on misidentification and alibi. His first alibi witness, his mother, testified that Lee had left her house with one of his friends at approximately 7 o'clock in the evening to fix a light problem in a car and go to a grocery store; but that she saw him again no later than "quarter to eight," as he was walking back to his house and she was on her way over there. His other alibi witness, his wife, testified that Lee came into the doorway of his house at "twenty minutes to eight, quarter to eight, something like that." A police officer testified that the police received a phone call from the One Hour Martinizing Cleaners at 7:51 p.m. reporting a robbery by a lone gunman. The friend in whose company Lee had left his mother's house did not testify at the trial.

Lee contends that his defense of alibi was jeopardized by an improper instruction to the jury that an alibi defense is as legitimate as any other defense "if proven". Lee asserts that the instruction erroneously shifted the burden of proof from the prosecutor to the defendant. The instruction was improper. The judge should have instructed "if not disproven" instead of "if proven". However, Lee's trial attorney did not object to the instruction before the jury retired to consider its verdict. Therefore, although we disapprove of the instruction as given, there was no reversible error since the issue was not preserved.

The complete alibi instruction given by the court reads:

"The defendant in this case also claims the defense of

what we call ALIBI, and that is, in simple English, that he was at another place at the time of commission of the alleged offense.

"I instruct you that this sort of defense is a proper one, and *is as legitimate if proven as any other defense.* You should consider all the evidence bearing upon that point and carefully examine it and if, in view of the evidence, you have any reasonable doubt as to whether the defendant was at some other place and *[sic]* the time the crime was committed, you should give him, the defendant, the benefit of any doubt and find him not guilty." (Emphasis added.)

In the continuation of the instruction, after the statement objected to, the court pointed out that "the benefit of *any* doubt" (emphasis added) should be accorded to the defendant. Therefore, the charge properly indicated that the defendant need not fully establish an alibi to have the benefit thereof, in rebuttal of the proofs of the prosecution. Testimony in support of an alibi need accomplish no more than raise a reasonable doubt of defendant's presence at the time and place of the commission of the crime charged. See *People v Marvill,* 236 Mich 595, 597; 211 NW 23 (1926).

· The issue presented to the jury was one of credibility. Taking the charge as a whole, we are persuaded that the jury understood that its task was to determine whether the alibi testimony created sufficient doubt that it could not find the defendant guilty of the robbery charged "beyond a reasonable doubt". The jury elected to believe the testimony of the complaining witness. We find that there was sufficient evidence in the record upon which the jury could reasonably have based its judgment of guilt.

## VI —ADMISSIBILITY OF TESTIMONY OF AN ALLEGED THREAT MADE TO A WITNESS

Defendant contends that he was denied the right to confront his accuser where the complaining

witness gave the explanation on redirect questioning by the prosecutor that she had identified the wrong man at the corporeal lineup because she had been frightened by alleged threats by her sister-in-law as follows:

"[S]he just told me [that] she knew him [defendant Doursey Lee] and was a real good friend of his; everything; and somebody would be after me; something, you know. I was scared * * * ."

Parenthetically, we find that the witness's testimony regarding the sister-in-law's alleged out-of-court statement is not barred by the hearsay rule. The hearsay rule proscribes evidence of statements made by another offered to prove the facts asserted therein. But where the alleged statements of the sister-in-law were offered to show, circumstantially, the effect of the communited statement on the hearer, the complaining witness, then it is not offered for a hearsay purpose because its value does not depend upon the truth of the statement. McCormick, Evidence, § 228, pp 464–465. Here, the testimony was elicited by the prosecutor on redirect to show the complaining witness's reasonable apprehension of danger and thereby rehabilitate her testimony after her misidentification at the corporeal lineup had been brought out by the defense.

Significantly, no objection was made to this testimony during the trial, yet Lee now argues that he should have had the right to confront the sister-in-law in court. Since the statements were not barred by the hearsay rule, the prosecution was not required to produce and indorse as a witness the out-of-court declarant. Therefore, Lee's claim of error apparently rests on MCLA 763.1; MSA 28.854 which provides that:

"On the trial of every indictment or other criminal accusation, the party accused shall be allowed to be heard by counsel and may defend himself, and he shall have a right to produce witnesses and proofs in his favor, and meet the witnesses who are produced against him face to face."

A defendant is afforded on appeal an opportunity to protect himself against infringement of his statutory or constitutional rights. But he is not entitled to retry his case on appeal. In the case at bar Lee was not denied the right to call, under the court's subpoena power if necessary, MCLA 600.1455; MSA 27A.1455, witnesses on his own behalf. Therefore, had he desired to confront the sister-in-law in court, he had the right to call her to the stand, as a hostile witness, and confront her face to face. He did not choose to do so, and therefore he will not now be heard to complain that his trial strategy was not effective.

No error being found, the conviction is affirmed.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON, LEVIN, M. S. COLEMAN, and J. W. FITZGERALD, JJ., concurred with WILLIAMS, J.