## PEOPLE v FLIPPO

1. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO COUNSEL—PHO-
    TOGRAPHIC IDENTIFICATION—CUSTODY—FOCUS OF INVESTIGATION.

    There are two conditions that must exist before a suspect is
    entitled to counsel at a photographic show-up: (1) the suspect
    must be in police custody, and (2) the police investigation must
    have focused on the suspect.

2. CRIMINAL LAW—WITNESSES—PHOTOGRAPHIC IDENTIFICATION—SUG-
    GESTIVENESS—TESTIMONY—IN-COURT IDENTIFICATION.

    A photographic identification procedure may be so impermissibly
    suggestive as to give rise to a very substantial likelihood of
    irreparable misidentification and thereby warrant the reversal
    of a defendant's conviction; however, there is no basis for
    reversal on this issue where the identification witness gave
    detailed testimony concerning the defendant's description based
    on a close range face-to-face confrontation with the defendant
    and stating that her in-court identification of the defendant was
    based on a view of his face at the scene of the crime.

3. WITNESSES—CRIMINAL LAW—IDENTIFICATION—ALIBI—JURY QUES-
    TIONS—WEIGHT OF EVIDENCE.

    A defendant's claims of mistaken identification by a witness and
    alibi are matters which deal with the credibility of witnesses
    and such questions are generally to be decided by the jury;
    therefore, where a jury has listened to the testimony and has
    observed the demeanor of the witnesses and has chosen to
    disbelieve the defendant, the Court of Appeals should not
    substitute its judgment for that of the jury absent a showing
    that the verdict was against the great weight of the evidence.

4. TRIAL—MOTIONS—NEW TRIAL—WEIGHT OF EVIDENCE—APPEAL AND
    ERROR.

    A defendant must first file a motion for a new trial in the trial

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 21 Am Jur 2d, Criminal Law §§ 368, 369.
[3] 21 Am Jur 2d, Criminal Law § 137.
[4] 58 Am Jur 2d, New Trial § 139.

court before he may seek a review of the question of the weight of the evidence.

Appeal from Lenawee, Rex B. Martin, J. Submitted June 3, 1976, at Lansing. (Docket No. 23145.) Decided August 23, 1976.

Anthony Flippo was convicted of breaking and entering with intent to commit larceny. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Harvey A. Koselka,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, by *Keith D. Roberts,* of counsel), for the people.

*Richard L. Roble,* for defendant.

Before: ALLEN, P. J., and D. E. HOLBROOK, JR., and E. H. PAPP,* JJ.

E. H. PAPP, J. Defendant was charged with breaking and entering a dwelling house with the intent to commit larceny in violation of MCLA 750.110; MSA 28.305. He was convicted by a jury in the county of Lenawee, on November 13, 1974,[1] and was sentenced by the Honorable Rex B. Martin, to 30 days in the county jail and 5 years on probation. The defendant appeals by right.

Defendant raises three issues: 1. that a pre-custody photographic line-up without counsel was improper after the investigation had focused on defendant; 2. that the in-court identification did not have an independent basis from the photo-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Both counsel are incorrect in stating that the trial was held on September 10, 1974—that date being the day of arraignment.

graphic identification; 3. that the verdict was against the great weight of the evidence. No motion for new trial was made by the defendant.

Prior to trial, after defendant's preliminary examination, defendant moved to have the complaining witness' in-court identification suppressed, claiming violation of an alleged right to have an attorney present when a pre-custody photographic identification proceeding was conducted, particularly when he was the prime suspect. In his argument before the magistrate, defendant cited *People v John Martin,* 37 Mich App 621; 194 NW2d 909 (1972), *remanded* 387 Mich 766 (1972), wherein this Court held that the constitutional right to have counsel present at a photographic identification does not attach until the accusatory stage is reached in the investigation of a crime. The magistrate rejected defendant's contention that counsel should have been present at the photographic display, saying:

"Well surely we hadn't reached that yet. We had the hunch of a detective who labeled it as sufficient or labeled the defendant as a suspect when really he wasn't able to accuse the defendant at that time. So what the court really interprets that testimony is as labeling the defendant as truly a suspect as the court notes it or the attorney notes it. It was a hunch on his part. The court does reject the motion of defendant."

Further, the magistrate stated in denying defendant's motion:

"We don't have any showing that it was suggestive of photographs or suggestive presentations made to create a misidentification. It appears that after taking the testimony of the complaining witness together, it appears that she was making to the Court a separate identification of the defendant and that the photo-

graphs were just another identification means that she was able to accomplish through her memory."

The testimony of the complainant at the preliminary examination was that on June 25, 1974, she was home alone; and at about 8:35 p.m. she heard a noise in the kitchen; that she went into the kitchen and noticed the sliding glass door, which had been closed earlier, was open; that she saw a person crouching outside the door on the deck-porch about eight feet away from her, she stood there for a moment and then spoke, whereupon the person stood up, turned and stared at her a few minutes, then went down the stairs leading from the deck-porch. She testified the person was wearing a green army-type jacket, which was open and that he had a shirt similar to a T-shirt underneath, with blue jeans. She further stated that after he turned toward her, she stared directly into his face for 5 to 10 seconds before he fled; that she then closed and locked the door with a board, and called the police, giving them a detailed description of the suspect including his physical characteristics, clothing and approximate age. She also testified there were mud prints, it having rained earlier, on the redwood porch, and a sandy footprint on the carpet just inside the kitchen door pointing directly towards the chair; that she realized her purse, which had been hanging on this kitchen chair, was missing and she again called the police to inform them.

She further testified that several days later, at the request of the police she went down to the station to examine some photos; that a woman at the desk gave her three or four photos to examine; that she went through them carefully, and then again a second time. She set one aside, gave the others to the woman-clerk and then said: "I looked

at this one for a couple of minutes to make sure", and then handed this one back, saying: "This is the person". The clerk asked her if she was sure, and she replied: "Yes, I'm positive."

At the trial, complainant's testimony was substantially the same but with some significant additions, including that she had a sideview of the defendant while he was crouched; that the time was 8:05 p.m., about five minutes after her roommate had left; that it was daylight savings time and that the sun had just set; that she observed him from a distance of six to seven feet for approximately five to seven seconds and that he was wearing regular shoes; that when defendant came to the hospital where she worked looking for a job, he looked familiar, and she thought, "No, this can't be", so as he was filling out the job application form she walked behind him, glanced over his shoulder and saw his name and recognized it as the one on the arrest warrant, thus confirming her recognition.

The argument advanced by defendant as to the first issue is that a suspect of a criminal investigation who becomes the subject of police identification procedures is entitled to counsel. What defendant is asking this Court is an extension of the two proscriptions set forth in *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973), to facts where defendant is *not* in custody. We decline to do so. In the instant case there is merely an indication that defendant at the time of the photographic display, was one of several "possible suspects".[2]

In *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974), defendant made the identical argument to

[2] His picture was included with four other suspects and another officer had placed defendant's name on the police suspect list because he believed it fit the description given by Ms. Reisterer over the telephone.

the Supreme Court as is made here. The Supreme Court's rejection of this contention could not have been more unequivocal:

"Lee argues that the counselless photographic showup violated his Sixth Amendment right to counsel and so tainted the complaining witness' later identification of him at his preliminary examination and trial as to require reversal of his conviction. He contends that his right to counsel had attached by the time the police showed a 'mug shot' of him to the complaining witness. He argues that since the police investigation had 'focused' suspicion on him on the basis of the clothes and similarity, the uncounselled photographic display was improper because its purpose was to build a case against him by eliciting identification evidence, and not merely to extinguish a case against an innocent bystander."

\* \* \*

"We decline to extend the reasoning of *Franklin Anderson* to the pre-custody, pre-questioning, mere suspicion phase that was evidenced here. It is not feasible to require appointment of counsel in cases of pre-custody photographic showups where there is no detention of the defendant since under such a rule each photograph arguably depicts a suspect and therefore each person whose photograph appears in the photographic display, or perhaps even the 'mug book' would require the representation of counsel. That would be impossible and absurd." *People v Lee, supra,* at 624–625.

In view of the holding in *Lee, supra,* we find that defendant was not entitled to counsel at the photographic display. See also *People v Metcalf,* 65 Mich App 37; 236 NW2d 573 (1975), which requires both custody and focus to invoke the *Anderson* rules; *People v Donnie Jackson,* 63 Mich App 20; 233 NW2d 711 (1975), which states even though a defendant is a possible suspect and had previously been in custody on an unrelated charge,

he is not entitled to counsel. However, as the Supreme Court pointed out in *Lee, supra,* use of a procedure which is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification may warrant reversal of a defendant's conviction on appeal. In the instant case, defendant's motions to suppress, both at the preliminary hearing and before trial in the circuit court were directed toward the in-court identification testimony and argued solely upon a claimed Sixth Amendment violation.

In the present case defendant, on appeal, argues that the photographic identification was handled quite poorly and the rationale of requiring counsel is that procedural difficulties may occur or improper suggestions made that otherwise invalidate the identification process and taint the subsequent prosecution, quoting from *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), and *Anderson, supra.* However, defendant failed to move, thus failing to preserve his objection, to suppress complainant's identification testimony based on improper and/or suggestive procedures. Neither the magistrate nor the trial court was confronted with this issue; nevertheless, from the record it appears both recognized and, *sua sponte,* considered the issue of suggestiveness. Both reached the same conclusion after examining the photographs in question and held they were not suggestive. The trial court in its opinion dated November 6, 1974, stated:

"They were of five young men. One was a bit older looking and had a scraggly mustache and slight beard along with red hair. Two of the pictures were of young men with definitely red hair and one had hair which was possible red. Two had darker hair. All had their hair parted in the middle and all had long hair. The

complaining witness had seen the defendant with his long red hair parted in the middle and tied in the back. His picture in the photograph showed long hair that framed his face and *was not tied in the back.*" (Emphasis added.)

The trial judge went on to say:

"The pictures actually used are available for review though there is some inconsistency in the testimony as to what pictures were used. The photographs were a representative group. They would not tend to throw accusations towards the defendant. The manner in which the complaining witness was given these photographs was certainly far from prejudicial. She went on her own on a subsequent date to the police department and a secretary there who knew nothing about the case simply handed her a group of pictures which had been selected by an officer."

We are impressed, as were the magistrate and the trial judge, by the complaining witness' testimony concerning the detailed description of the subject and specifically the basis for her subsequent pre-custody identification of his photograph. We quote from the preliminary examination transcript:

"*A. [Witness Reisterer]:* I didn't spend a lot of time looking at the other pictures because when I did see this person on the porch, what I saw very distinctly was the *face* and when I saw the *face* in the photographs, that's what I was able to identify. So I didn't really spend any time looking at the other people or anybody else.

\* \* \*

"*Q. (By the prosecutor):* What did you base your in-court identification of the defendant on?
"*A.* What did I base it on?
"*Q.* Yes

"*A.* The *face.* I remember seeing that *face* on my porch and *face* again in the picture and that *face* again in my office. That was the same *face* I saw that day in Court. Plus the physical build and the hair." (Emphasis added.)

We agree with both the magistrate and the trial judge that neither the photographs nor the procedure of the display were improper or suggestive.

In his last issue, defendant asserts the only evidence linking him to the scene of the crime was the identification made by the complaining witness. He does not contend that there was no evidence to establish that the crime he was charged with was committed, only that he was not the one who did it. His defense was alibi. In *People v Smalls,* 61 Mich App 53, 57; 232 NW2d 298 (1975), this Court clearly stated that a question of this kind is one for the jury:

"On appeal defendant first contends that the evidence produced at trial was insufficient to support a finding of guilty beyond a reasonable doubt. Defendant argues that the identification by the teller and the assistant manager of the bank should not have been believed and that, in light of the testimony of his alibi witness, the evidence was insufficient. Claims of mistaken identification by a witness and alibi are matters which deal with the credibility of witnesses and such questions are generally to be decided by the jury. *People v Boynton,* 46 Mich App 748; 208 NW2d 523 (1973); *People v Hughes,* 26 Mich App 355; 182 NW2d 631 (1970). After listening to the testimony and observing the demeanor of the witnesses, the jury chose to disbelieve defendant. We shall not substitute our judgment for theirs."

We further note that defendant failed to file a motion for new trial claiming that the verdict was against the great weight of the evidence. We need

not cite cases to emphasize that point, for it has been a long-standing rule in Michigan that a motion for new trial must be filed when defendant seeks to review the question of weight of the evidence.

For the reasons herein stated the conviction of the defendant is affirmed.