PEOPLE v. JORDAN.

1. HOMICIDE—FIRST-DEGREE MURDER—INCLUDED OFFENSES.
   On charge of first-degree murder, the offenses of second-degree
   murder and manslaughter are included offenses (CL 1948,
   § 750.316).

2. SAME—MURDER—INCLUDED OFFENSES—MANSLAUGHTER—NEGLI-
   GENT HOMICIDE.
   It was not error for trial court to decline to give request to
   charge that the offense of negligent homicide was an included
   offense because instrument of death was an automobile, where
   the crime charged was murder and charge, as given, required
   jury to find that defendant was guilty of first-degree murder,
   second-degree murder or manslaughter or not guilty (CL 1948,
   §§ 750.316, 750.325).

Appeal from Ingham; Salmon (Marvin J.), J.
Submitted June 13, 1956. (Docket No. 76, Calendar
No. 46,426.) Decided December 28, 1956.

Margaret Ruth Jordan, on an open charge of mur-
der, was convicted of manslaughter. Affirmed.

*Thomas M. Kavanagh,* Attorney General, *Charles
E. Chamberlain,* Prosecuting Attorney, *Donald A.
Jones,* Assistant Prosecuting Attorney, for plain-
tiff.

*Howard A. McCowan (Benjamin F. Watson,* of
counsel), for defendant.

REFERENCES FOR POINTS IN HEADNOTES
[1] 26 Am Jur, Homicide §§ 38, 283.
[2] 26 Am Jur, Homicide § 554 et seq.

Boyles, J. The information filed in the circuit court for Ingham county in this case charged the defendant with the murder of one Lenwood Stowe.* On a trial by jury a verdict of guilty of manslaughter was returned, and on leave granted the defendant has appealed from the ensuing sentence.

Counsel are in agreement that the following is substantially the factual situation:

In the early hours of May 2, 1954, defendant Jordan was driving a motor vehicle in which Lenwood Stowe was a passenger, after leaving a tavern near Lansing. Both had been drinking. After stopping in Lansing, they continued to where defendant stopped the car at the intersection of East Holt road and Lynn road, approximately half a mile south of the place on Lynn road where Stowe resided. The locality is rural. It was about 2:30 a.m. Neither road is a State highway; both are blacktop; and the place of the alleged crime is in Ingham county.

At the intersection mentioned, the parties talked. Stowe desired to "park" for a while. Defendant was not so minded. A struggle ensued. Defendant testified she was struck by Stowe and her upper plate knocked out of her mouth and out of the car. Both parties got out to hunt it. Both were on hands and knees feeling in the dark for the plate. Stowe lit a cigarette lighter for some illumination, and the ludicrousness of the situation assailed both and they laughed. Defendant got back in the car. Stowe did not. They said "good night." Defendant turned her car and drove west on East Holt

---

* "That heretofore, to-wit: on the 2d day of May, A. D., 1954, at the township of Alaiedon and in the county of Ingham, aforesaid, one Margaret Ruth Jordan late of the township of Alaiedon and county of Ingham aforesaid, murdered Lenwood W. Stowe, in violation of section 316 of PA 1931, No 328, being CL 1948, § 750.316 (Stat Ann § 28.548), contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan."

road; Stowe started walking north on Lynn road.

Thereafter, defendant, instead of turning south to her home in Mason, decided to return, she testified, to see whether Stowe was making progress toward his home. She claimed to be worried about him because of his intoxicated condition. Defendant later took officers over the route traversed by her from the time she first left Stowe at the intersection and the time she returned to the same place. This covered a matter of 2 or 3 miles.

On reaching the intersection of East Holt road and Lynn road, defendant testified she drove north on the latter road, looking for Stowe. As to her speed, she testified she was not traveling rapidly and entertained no animus toward Stowe; that her sole interest was in determining whether he was making progress toward his dwelling. Conversely, the State urges inferentially that in the interval between first leaving Stowe at the intersection on foot, and returning to the scene, defendant, because of Stowe's earlier conduct and the striking of her by him, had become angered, built up an intent to do him physical harm, planned propelling her automobile upon him and either by reason of existence of actual malice coupled with premeditation, or malice plus deliberate use of a dangerous weapon, namely, a motor vehicle, defendant was guilty of the crime of murder.

Driving north at reasonable speed as she claimed in her evidence, defendant testified she saw Stowe walking (north) on the right hand side of the blacktop, "walking with kind of his feet apart like walking along the road;" that she was driving sort of in the middle of the pavement, 2 or 3 feet from him, and as she went by she heard a thump and "thought he had hauled off and hit the car with his hand as I was going by;" that she turned around about a mile north and retraced her route, becoming panicky

at not seeing Stowe. Traveling south, she observed something off the road to her left, the east side of the road. She stopped, got out, investigated, and it was Stowe lying slightly off the road. He was alive, but not conscious.

Defendant reentered her car, drove to the sheriff's office in Mason, and reported a man injured at the point in question. Officers went to the scene. Stowe was dead. Various measurements were taken, condition of the area noted, Stowe's hat found some distance from the body; deceased's coat was split up the back. Defendant's car was examined later in the morning. The right headlight was broken, there was a noticeable dent in the right fender just above the light; a piece of car undercoating found at the scene fitted under the right fender, obviously having been knocked off.

Defendant later that day, about 1 o'clock in the afternoon, signed a statement outlining the events of the evening, in which she is alleged to have said, with reference to coming back to the scene to locate Stowe, that she "planned to scare the pants off him." Defendant testified that an hour or so before making the statement mentioned she was given a "yellow jack" tablet. The jail matron testified the tablet was given some hours earlier, at 10 to 11 o'clock in the morning. This tablet is a narcotic derivative, obtained only on prescription, and is given as a sedative at the jail. Defendant's evidence further was to the effect that she had no recollection, because of cloudy and befogged mind, of making the statement relative to driving close to the deceased to scare him, although she might have so stated. This statement of defendant was admitted in evidence and the jury instructed in the charge of the court as to the weight, if any, which they might give to the same.

Following the submission of evidence as above set forth, defendant submitted written requests to charge, the court charged the jury, the jury retired and after a time returned a verdict of manslaughter. The defendant was sentenced to a term of not less than 2–1/2 years or more than 15 years, in the Detroit House of Correction.

The only claim urged by appellant for reversal is that the trial court committed prejudicial error in failing to charge the jury, as requested in writing by the appellant, on the law of negligent homicide.

The information charged the defendant with first-degree murder. Second-degree murder and manslaughter are included offenses. The court properly and fully charged the jury as to what constituted murder in the first degree and second-degree murder, and then said:

"If you do not believe she is guilty of murder in the second degree or if you have a reasonable doubt of it, in either event it is your duty to acquit her of that offense, and then consider whether or not she has been proved guilty of manslaughter."

The court then charged the jury as to what, in the law, constituted the crime of manslaughter. Appellant makes no claim but that the charge of the court on the crime of manslaughter was proper and according to the law. The court concluded the charge by saying that if the jury had a reasonable doubt as to the defendant being guilty of manslaughter, it was their duty to acquit her of that offense, and that there were only 4 possible verdicts—guilty of murder in the first degree, murder in the second degree, manslaughter, or not guilty.

Counsel for appellant had filed with the court a written request to charge the jury as follows:

"I further charge you that included in the information filed against this defendant by the prosecut-

ing attorney is an offense known in law as negligent homicide, and in accordance with the statute is an included offense where death of one occurs and the instrument of death be an automobile. You are cautioned, however, that the mere death of one by striking by an automobile is not alone evidence of guilt of any criminal offense on the part of the one driving the vehicle."

Appellant's brief states that this is now the sole question in the case—whether this request should have been given; and for the basis appellant relies on section 325 of the penal code,* which reads:

"The crime of negligent homicide shall be deemed to be included within every crime of manslaughter charged to have been committed in the operation of any vehicle, and in any case where a defendant is charged with manslaughter committed in the operation of any vehicle, if the jury shall find the defendant not guilty of the crime of manslaughter such jury may in its discretion render a verdict of guilty of negligent homicide."

The fallacy in appellant's reasoning is that in this case the defendant had not been *charged* with *manslaughter* in the operation of any vehicle. The defendant was charged with murder. There might be ground to doubt, were the question here, whether the information, as filed, would support a verdict of guilty of negligent homicide. Whether the defendant could have been charged in the information with negligent homicide, under the appropriate statute, is, of course, beside the issue here. Furthermore, the difference between a charge of the crime of negligent homicide and a charge of murder may lie in the question of an intent to kill. While possibly that question may have been brought in by

---

* PA 1931, No 328, § 325 (CL 1948, § 750.325 [Stat Ann 1954 Rev § 28.557]).

appellant, it is not necessarily here now for decision. Affirmed.

SHARPE, SMITH, EDWARDS, KELLY, and BLACK, JJ., concurred with BOYLES, J.

DETHMERS, C. J., and CARR, J., concurred in the result.