PEOPLE v McINTOSH

1. Homicide—Instructions to Jury—Felony-Murder—Included Offenses—Second-Degree Murder—Manslaughter—Evidence.

A jury instruction defining second-degree murder and manslaughter as lesser included offenses of a felony-murder charge is proper where there is evidence tending to support the lesser offenses.

References for Points in Headnotes

[1] 40 Am Jur 2d, Homicide §§ 498, 534.

[2] 7 Am Jur 2d, Automobiles and Highway Traffic § 278 *et seq.*

[3, 4] 40 Am Jur 2d, Homicide § 183 *et seq.*

Acquittal on homicide charge as bar to subsequent prosecution for assault and battery or vice versa. 37 ALR2d 1068.

[5, 9] 47 Am Jur 2d, Jury § 195 *et seq.*

[6] 75 Am Jur 2d, Trial § 30 *et seq.*

[7] 29 Am Jur 2d, Evidence §§ 339 *et seq.,* 503.

30 Am Jur 2d, Evidence § 1127.

40 Am Jur 2d, Homicide §§ 301–309.

Admissibility of evidence as to other's character or reputation for turbulence on question of self-defense by one charged with assault or homicide. 64 ALR 1029, s. 1 ALR3d 571.

[8] 75 Am Jur 2d, Trial § 310.

Propriety and effect of attack on opposing counsel during trial of criminal case. 99 ALR2d 508.

[10] 23 Am Jur 2d, Depositions and Discovery § 307 *et seq.*

[11] 23 Am Jur 2d, Depositions and Discovery § 309.

[12, 13] 75 Am Jur 2d, Trial §§ 122, 123.

Remarks or acts of trial judge criticizing, rebuking, or punishing defense counsel in criminal case, as requiring new trial or reversal. 62 ALR2d 166.

[13] 21 Am Jur 2d, Criminal Law § 319.

[14–17] 21 Am Jur 2d, Criminal Law §§ 303, 527.

30 Am Jur 2d, Evidence § 973.

Presentence reports: defendant's right to disclosure of presentence reports. 40 ALR3d 681.

[17] 5 Am Jur 2d, Appeal and Error §§ 778, 867.

2. HOMICIDE—INSTRUCTIONS TO JURY—FELONY-MURDER—INCLUDED OFFENSE—NEGLIGENT HOMICIDE—INVOLUNTARY MANSLAUGHTER.

A court may properly refuse to instruct a jury on the offenses of negligent homicide and involuntary manslaughter with a motor vehicle as lesser included offenses of felony-murder since involuntary manslaughter must be specifically charged, and negligent homicide is only a lesser included offense of manslaughter charged to have been committed in the operation of any vehicle.

3. CONSTITUTIONAL LAW—CRIMINAL LAW—DOUBLE JEOPARDY—ASSAULT—FELONY-MURDER—ATTEMPTED RAPE—DIFFERENT OFFENSES.

The submission to a jury of separate charges of assault with intent to commit rape and felony-murder, with an instruction that the defendant could be convicted of both was not a violation of the double-jeopardy prohibition where the alleged assault with intent to commit rape of a female victim was a different offense than the alleged attempted rape which was the felony of the charged felony-murder of a male who came to the female's assistance.

4. CONSTITUTIONAL LAW—CRIMINAL LAW—DOUBLE JEOPARDY—SEPARATE CRIMES—JOINDER—COMMON ELEMENTS—SAME FACTS.

A defendant is not placed in double jeopardy by the joinder of separate crimes in one criminal prosecution even though the charges have common elements and involve proof of the same facts.

5. JURY—VOIR DIRE—CRIMINAL LAW—DISCOVERY—JURY SLIPS—VOTING RECORDS—APPEAL AND ERROR—PREJUDICE.

Discovery of jury slips prepared by the prosecution which contain the voting records of prospective jurors should not be precluded by the trial court, but the focus of appellate review will be on whether the jury which was sworn was prejudiced against the defendant; where the record fails to disclose such prejudice, the court will not reverse for failure to allow discovery of the slips.

6. COURTS—DISCRETION—WITNESSES—RESIDENCE—FORECLOSING INQUIRY—SAFETY.

It is within the discretion of a court to foreclose open court inquiry regarding the residence of a witness which might tend to endanger her personal safety.

7. Criminal Law—Evidence—Peaceful Character—Violent Character—Anticipation—Prosecutors—Self-Defense.

Evidence of the peaceful character of the deceased is not admissible in a murder trial in the prosecution's case-in-chief in anticipation of defense testimony of violent character supporting a plea of self-defense.

8. Criminal Law—Prosecutors—Prejudicial Statements—Deliberate Injection—Mistrial—Appropriate Response—Lying—Jury—Curative Instructions.

A claim of mistrial because of deliberate injection of prejudicial statements by the prosecution is misplaced where the remarks of the prosecutor were an appropriate response to a charge by defense counsel that the prosecutor was lying and the statement was made in the presence of the jury solely because defense counsel insisted on arguing the matter with the jury present and where the court gave careful instruction to the jury to disregard the matter.

9. Jury—Voir Dire—Proposed Questions—Precise Language—Discretion.

The extent of allowable voir dire is largely a matter of judicial discretion as to manner and scope; a trial judge does not have to allow a voir dire question to be asked in the precise language in which it was submitted by counsel.

10. Discovery—Criminal Law—Evidence—Admissibility—Failure of Justice—Suppression—Burden of Proof.

Discovery will be ordered in all criminal cases when, in the sound discretion of the trial court, the thing to be inspected is admissible in evidence and a failure of justice may result from its suppression; the burden of proof is on the moving party.

11. Discovery—Photographs—Burden of Proof—Necessity—Motions—Authority—Access—Notice.

A court's conditional denial of a defense motion for production of photographs taken at the scene of a killing was proper where defense counsel made no effort to sustain his burden of proving that they were necessary, failed to raise the question by timely pretrial motion, neglected to substantiate his position by authority as requested by the court, and either ignored the discovery afforded by the court through access to the photographer or neglected to advise the court that inquiry had been made of the photographer and that further assistance was

required from the court or that such inquiry was not productive of the photographs.

12. JUDGES—IMPRUDENCE—ANIMOSITY—CAUTIONARY INSTRUCTION— RECORD—PREJUDICE.

A single instance of judicial imprudence in displaying animosity toward defense counsel in the presence of the jury did not require a mistrial where it was immediately followed, on the court's own volition, by a cautionary instruction and where the record reviewed in its entirety reveals no atmosphere of prejudice which might have deprived the defendant of a fair trial.

13. CONSTITUTIONAL LAW—CRIMINAL LAW—RIGHT TO COUNSEL—EFFECTIVE COUNSEL—JUDGES—DISQUALIFICATION—RESPECT—ALLOCUTION—EFFECTIVE REPRESENTATION—RECORD.

A defendant was not deprived of effective assistance of counsel by the refusal of a trial judge to disqualify himself from sentencing where it was claimed that allocution from counsel, for whose integrity, veracity, and character the judge had no respect, could not possibly be fairly heard or objectively evaluated, where it was evident from the record that counsel had been allowed to effectively represent the defendant during the trial despite the trial court's opinion of his prior misconduct.

14. CRIMINAL LAW—PRESENTENCE REPORT—CRIMINAL ACTIVITY—NO CONVICTION—CONSIDERATION—REFUTATION—COURT RULES.

Reference to other criminal activity of a defendant, for which no conviction has resulted, may be included in the presentence report and considered by the court, provided the defendant has an opportunity for refutation (GCR 1963, 785.12).

15. CRIMINAL LAW—PRESENTENCE REPORT—DISCLOSURE—SENTENCING DATE—REVIEW—INVESTIGATION.

Disclosure of the presentence report should be made sufficiently before the date of sentencing to allow counsel to review important facts with the defendant and to investigate claimed errors.

16. CRIMINAL LAW—PRESENTENCE REPORT—CONTENTS—JUDGES—DISCRETION—PREJUDICE—EVIDENTIARY HEARING—COURT RULES.

A trial judge is granted the discretion by court rule to consider and weigh the contents of the presentence report, both objective and subjective, and to choose the means of ascertaining, when an objection is raised, that the defendant is not prejudiced in sentencing by false information; he is not compelled to hold an evidentiary hearing, but, in the exercise of his discretion, he may do so (GCR 1963, 785.12).

17. APPEAL AND ERROR—PRESENTENCE REPORT—JUDGES—DISCRETION
—FAILURE TO EXERCISE—FALSE INFORMATION—PREJUDICE.
Failure of a trial judge to respond to a defense claim that the
presentence report contains false information constitutes abdi-
cation of his discretion; failure to exercise discretion to ascer-
tain that the defendant is not prejudiced by false information is
error requiring resentencing.

Appeal from Recorder's Court of Detroit, John
P. O'Brien, J. Submitted December 2, 1974, at
Detroit. (Docket No. 17295.) Decided July 21, 1975.
Leave to appeal granted, 395 Mich 770.

Samuel D. McIntosh was convicted of man-
slaughter. Defendant appeals. Conviction affirmed,
remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Patricia J. Boyle,* Principal
Attorney, Research, Training and Appeals, and
*Robert A. Reuther,* Assistant Prosecuting Attor-
ney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: J. H. GILLIS, P. J., and V. J. BRENNAN
and PETERSON,* JJ.

PETERSON, J. Defendant was charged by separate
informations with the offenses of assault with
intent to commit rape, MCLA 750.85; MSA 28.280,
and first-degree murder by killing one Henry
Turner while perpetrating or attempting to perpe-
trate rape, MCLA 750.316; MSA 28.548. The
charges were consolidated for trial, resulting in
defendant's conviction by jury of the crime of
manslaughter, MCLA 750.321; MSA 28.553. He

* Circuit judge, sitting on the Court of Appeals by assignment.

was sentenced to a term of 10 to 15 years imprisonment and appeals.

It was the people's theory that defendant assaulted one Dolores Ann Brantley with intent to commit rape and that when one Henry Turner came to her aid, defendant killed Turner by a blow to the face with a bottle. Defendant contended that Ms. Brantley, having solicited his companionship professionally, attempted to steal his money; that Turner came upon the scene and intervened in the belief that defendant was robbing Ms. Brantley; that after a brief struggle, defendant attempted to drive away but Turner was struck by the car and received his fatal injury in that fashion.

Defendant asserts various claims of error in the submission of the charges and in the jury instructions. There was no error in the jury instruction defining second-degree murder and manslaughter as lesser included offenses of the felony-murder charge. We do not agree with *People v Bufkin,* 43 Mich App 585; 204 NW2d 762 (1972); *People v Bufkin (On Rehearing),* 48 Mich App 290; 210 NW2d 390 (1973), and think the better rule is that stated in *People v Wimbush,* 45 Mich App 42; 205 NW2d 890 (1973), *People v Ernest Edwards,* 47 Mich App 307; 209 NW2d 527 (1973), and *People v Smith,* 55 Mich App 184; 222 NW2d 172 (1974). Since there was evidence tending to support the lesser included offenses, the instruction was proper. *People v Carter,* 387 Mich 397; 197 NW2d 57 (1972). *Cf. People v Allen,* 390 Mich 383; 212 NW2d 21 (1973).

Neither was it error by the court to refuse defendant's requests to instruct on the offenses of negligent homicide, MCLA 750.324; MSA 28.556, and involuntary manslaughter with a motor vehicle as lesser included offenses of murder. Involun-

tary manslaughter with a motor vehicle must be specifically charged, and negligent homicide is only a lesser included offense of " * * * manslaughter charged to have been committed in the operation of any vehicle", MCLA 750.325; MSA 28.557. See *People v Ryczek,* 224 Mich 106; 194 NW 609 (1923), *People v Jordan,* 347 Mich 347; 79 NW2d 873 (1956).

Nor was there error in the court's submission of both the assault and the murder charge to the jury with an instruction that defendant could be convicted of both. The alleged assault with intent to rape Ms. Brantley was a different offense than the alleged attempted rape which was the felony of the charged felony-murder, *People v Gibbons,* 260 Mich 96; 244 NW 244 (1932). And both were different than the killing of Turner, upon which the murder charge was predicated. Even though the charges had common elements and involved proof of some of the same facts, there was no double jeopardy, *People v Stewart,* 46 Mich App 282; 207 NW2d 907 (1973), and the matters were properly joined. *People v Andrus,* 331 Mich 535; 50 NW2d 310 (1951), *People v White,* 390 Mich 245; 212 NW2d 222 (1973).

Relying on *People v Aldridge,* 47 Mich App 639; 209 NW2d 796 (1973), defendant claims error by the trial court's refusal to allow discovery of the prosecution's dossier on the jury panel. We do not concur with *Aldridge,* and think the better view is that expressed in *People v Stinson,* 58 Mich App 243; 227 NW2d 303 (1975).

Defendant also asserts error in the course of trial in several particulars. It is claimed that defendant's right of cross-examination was erroneously limited when the court sustained a prosecution objection to a question as to the street upon

which the witness resided, citing *Alford v United States,* 282 US 687; 51 S Ct 218; 75 L Ed 624 (1931), and *Smith v Illinois,* 390 US 129; 88 S Ct 748; 19 L Ed 2d 956 (1968). There was evidence, however, indicating that just prior to the cross-examination of this witness, she had been threatened by someone among the spectators in the courtroom. It was, thus, within the discretion of the court to foreclose open court inquiry regarding the residence of the witness which might tend to endanger her personal safety. *Smith, supra,* at 134–135, 88 S Ct at 751; 19 L Ed 2d at 960, *People v Paduchoski,* 50 Mich App 434; 213 NW2d 602 (1973). And we note that defendant does not contend that the address of the witness was unknown to defense counsel.

During the examination of the mother of the deceased Henry Turner, the prosecutor asked the following question and received this answer:

"*Q.* Now, Ma'am, as a result of this particular incident involving your son, is it true that Mr. Turner got an award from the City Council?
"*A.* Yes, he did."

Defendant promptly objected, without stating any ground therefor. The question was argued and the objection was properly sustained; evidence of the peaceful character of the deceased not being admissible in the prosecution's case in chief in anticipation of defense testimony of violent character supporting a plea of self-defense, *People v Dunn,* 233 Mich 185, 193; 206 NW 568 (1925), and this not being a proper means of proof of peaceful reputation in any event. Defendant does not contend that the ruling was inadequate to cure the error. Rather, he asserts that the court should have declared a mistrial when, during the argu-

ment of the objection, the prosecuting attorney again referred to the award. However, defendant's reliance on *Cachola v The Kroger Co,* 32 Mich App 557; 189 NW2d 112 (1971), in support of his claim for a mistrial is misplaced, standing as it does for the proposition that the deliberate injection of prejudicial statements by counsel is misconduct warranting reversal.

Here, defense counsel[1] twice declined to have the jury excused before the objection was argued and called the prosecutor's reference to the award a lie. At this point, both the court and prosecutor could well have taken defense counsel's general objection as going to the existence of the award. The prosecutor's response, which is the claimed basis for mistrial, was as follows:

"When Mr. Halpern says it's a lie, I have the document which I intend to introduce * * * . He received an award from the City Council, from Councilman Ernest Brown. * * * And it related to Mr. Turner's actions in trying to be a good citizen."

The response was appropriate to counsel's categorization of the prosecutor's reference to an award as a lie and was not a case of deliberate prosecutorial misconduct. It is unfortunate that the response was made in the presence of the jury, but this was solely because defense counsel insisted on arguing the matter with the jury present. The trial court gave a careful instruction to the jury to disregard the matter, and that was all that defendant was entitled to, having prompted the statement in the presence of the jury. To allow the defense to create its own mistrial grounds would reduce trials to chaos, as might well have hap-

---

[1] It should be noted that appellate counsel for defendant did not represent him during trial.

pened here on this and other occasions but for the patience of the trial judge.

Defendant raises other questions pertaining to the conduct of the trial which we do not find meritorious but shall note in our discussion of his claim that the trial judge was guilty of personal animus towards defense counsel, and hence (1) erred in refusing to disqualify himself, and (2) made a fair trial impossible. Some sharp comments and reprimands directed by the court to defense counsel lends verisimilitude to these claims. At various points in the pretrial proceedings, the trial judge accused counsel of "a con job", of being untruthful, of lying and being psychotic; the judge threatened counsel with contempt, jailed him, and again threatened to, and did, find him in contempt. But, those comments and reprimands must not be taken alone. A reading of the entire record discloses that counsel was rude, contumacious, dissembling and equivocating, often engaging in conduct which seemed to have been designedly intended to create error or cause the appearance of error.

Problems between court and counsel persisted through a long and painful trial, but the events preceding the taking of testimony disclose the genesis of defense counsel's agitation of the court. Defendant was arraigned on the murder charge on January 22, 1973, on which date a pretrial conference was set for February 1 and a trial date for March 20, 1973. At pretrial, defense counsel requested discovery only of police reports and indicated that no motions were to be filed. The assault case was assigned to the same trial judge and scheduled for trial the week after the murder case. In that case, defense counsel obtained a discovery order for the disclosure of the names of persons

known to the complainant to be acquainted with a man, not a witness, for whom the complainant at preliminary examination claimed to have mistaken the defendant, leading to her entering defendant's car.

The events of March 19 and March 20 clearly demonstrate that defense counsel did not want to go to trial before the assigned judge. On the 19th, the day before the murder trial was scheduled to commence, he apparently sought out the court in chambers, leading to a discussion on the record wherein he sought an adjournment on the ground that the prosecution had not complied with a discovery order. That order, it developed, did not pertain to the murder case but to the assault case. Whereupon, counsel claimed that he had moved to consolidate the cases. When the court noted no such motion in the file, counsel indicated that adjournment was not only necessary because he hadn't had the discovery ordered in the assault case, but because he needed time to file a motion to dismiss the assault case or, in the alternative, for consolidation, and also for discovery. He also sought to convey the impression that he had sought adjournment the preceding Wednesday by a request to the court clerk, but admitted in the presence of the clerk that the clerk had told him to see the judge and that he had failed to do so. When the trial judge noted that the trial date had been set for some time, that he had alloted the remainder of the month for the two trials and that he would then be out of the trial schedule and assigned to preliminary examinations, defense counsel disclosed that he had already unsuccessfully approached the presiding judge about assignment of the cases to another judge for trial at a later date. The trial judge quite properly indicated

that counsel was free to again appeal to the presiding judge but should be prepared to commence trial the following morning. While that ended the formal proceedings of the 19th, later proceedings disclose that the trial judge and prosecutor engaged in further conversation with defense counsel for the purpose of immediately giving him the information required by the discovery order in the assault case, but that he rebuffed the offer and left the courtroom.

On the following morning, when the murder case was called for trial, defense counsel announced that he was not ready and that he had been unable to prepare for trial because of the prosecution's non-compliance with the discovery order in the assault case. The trial judge took the matter in hand and forthwith obtained the required information under oath and on the record, which record leads us to believe that counsel could have obtained the information by himself with a modicum of effort or from the prosecutor's office by the courtesy of a phone call noting that the order had not been complied with and that the assault trial was approaching. Counsel continued to insist that he needed additional time for preparation. When the court reminded counsel that if the matter could not be heard in March, it would have to go over to mid-July because of the court's schedule, counsel insisted on the right of his client to a speedy trial, adding, "I'd like the record to reflect the judge is laughing"!

Counsel then (1) moved for consolidation of the murder and assault cases, (2) was given an adjournment until the following day, (3) made an oral motion and was granted wholesale discovery of the police file, (4) insisted upon and made an oral motion to dismiss the assault case or, alterna-

tively, failing that, for consolidation of the two cases. The motion to dismiss was denied and the motion to consolidate was granted, defense counsel noting that he wanted it "clear it's not my motion to consolidate". Apparently the trial judge did not laugh. The humor of the situation was undoubtedly lost to him as these events, briefly narrated here, unfolded with language and comments of counsel that were, without cause, disrespectful and contemptuous to the court.

The next day, March 21st, selection of the jury began notwithstanding defense counsel's claim that he was unready and being forced into trial without adequate time for preparation (although the course of trial proved, to the contrary, that he was well prepared). The proceedings had not progressed far before a dispute arose out of the presence of the jury which culminated in the trial judge ordering that defense counsel be locked up. Released after a brief detention, counsel moved that the trial judge disqualify himself, upon denial of which the motion was taken to another judge who also denied it. Both rulings were correct: the record to this point fails to substantiate the claim that the trial judge was displaying a bias in favor of the prosecution or personal animus towards defense counsel.

Returning to the business of selecting a jury, the court was advised that some members of the jury panel might have heard something of the disqualification motion and discussed it among themselves. The court's offer to discharge the panel was declined by defense counsel and voir dire was commenced by the court. Defense counsel requested and was denied the right to voir dire the panel, individually and personally, rather than through the court. It is claimed that this denial was error,

depriving defendant of the opportunity to form an
intelligent basis, juror by juror, for the exercise of
challenges, particularly as to impressions the
panel members may have formed about the pro-
ceedings of the morning. The jury heard the ques-
tion requested by defense counsel and the trial
judge then made inquiry of the panel in several
different ways to ascertain that there would be no
prejudice to the defense because of any impres-
sions they might have formed. The manner of the
inquiry was within the discretion of the court and
did not deprive defendant of an adequate basis for
challenge even though not in the precise language
requested by defense counsel and not addressed to
the panel members individually. *People v Hoff-
meister,* 52 Mich App 219; 217 NW2d 58 (1974).
With thirty-two peremptory challenges left, de-
fense counsel declined either to exercise challenges
or express approval of the jury. The jury was
sworn and the trial began.

Defendant alleges error in the court's refusal,
during trial, to compel prosecution disclosure of
some photographs taken at the scene of the kill-
ing. Early in the trial, the court was advised that
the prosecution had furnished defense counsel
with photographs to be used as exhibits, ten in
number, taken by a police evidence technician, but
had declined to provide other photographs in the
police file. These photographs had been taken by
the Accident Prevention Bureau (A.P.B.), and were
not intended as prosecution exhibits. Defense coun-
sel indicated that he had been shown those photo-
graphs and knew who the photographer was. The
court conditionally denied defense counsel's de-
mand for production of the photographs, giving
him time to submit authority in support of his
demand. Counsel failed to pursue the matter by

producing authority in support of his position but repeated the demand later when the prosecution's photographic exhibits were identified, and again at the close of the prosecution's proofs, now contending that he had not been shown the A.P.B. photographs and needed to have access to the photographer whose identity he now said he did not know. The court again denied defendant's motion for production of the photographs but did require identification of the A.P.B. photographer, giving defendant the right to call him as a witness and to use the photographs in that fashion. Defendant did not do so.

In *People v Maranian,* 359 Mich 361, 368; 102 NW2d 568, 571–572 (1960), the Court said:

"Discovery will be ordered in all criminal cases, when, in the sound discretion of the trial judge, the thing to be inspected is admissible in evidence and a failure of justice may result from its suppression. The burden of showing the trial court facts indicating that such information is necessary to a preparation of its defense and in the interests of a fair trial, and not simply a part of a fishing expedition, rests upon the moving party."

Entirely apart from the possibility that defendant's whole claim is a sham, *i.e.,* that counsel had inspected the photographs, it is clear that he made no effort to sustain the burden in *Maranian,* failed to raise the question by timely pretrial motion, neglected to substantiate his position by authority as requested by the court, and either ignored the discovery afforded through access to the A.P.B. photographer or neglected to advise the court that inquiry had been made and either required further assistance from the court or was not productive of relevant photographs. There was no error.

Defendant also asserts error in the trial court's denial of a mistrial motion because of a conversation, participated in by the court, in the presence of the jury while defense counsel was out of the courtroom, which conversation was not recorded and reflected adversely on defense counsel. While numerous instances had occurred to mar the trial to this point, the trial judge had avoided censure of defense counsel in the presence of the jury. This incident, late in the trial, occurred when defense counsel asked to have "a couple minutes, two minutes," to talk to a defense witness, to which the court consented. Defense counsel then left the courtroom with the witness, without asking permission to do so.

As we reconstruct the events from the subsequent record, it appears that defense counsel was absent from the courtroom for considerably more than two minutes. While judge and jury sat waiting, desultory conversation sprang up in the courtroom, in which the trial judge participated, and of which no record was made. It appears to have been innocuous, and did not involve a discussion of the case.

Upon defense counsel's return to the courtroom, he demanded to know if conversations had occurred in his absence and whether a record had been made thereof. The court reporter said something like:

"Good Lord, give me the strength to further contend with this man and finish this trial."

Defense counsel heard the statement in part and demanded to know what the reporter had said was "trying", to which the trial judge replied:

"I think it's obvious to the jury that Mr. Williams, who has worked for me for more than six and a half years, and I count him as a friend, and for reasons of his own, dislikes you."

The judge then immediately instructed the jury that any animosities between court, counsel, the reporter and others involved must play no part in their decision and reminded them of their oath and their duty to avoid bias or prejudice.

Of the various judicial comments of which defendant complains, this was the only one occurring in the presence of the jury. It was, of course, imprudent, but we have concluded that neither his comment, nor the sum of all comments, by the court to defense counsel require reversal.

A judge is no less human because he has become a judge. He is not devoid of opinion or emotional reaction to those about him or always correct in those opinions and reactions. He has, perhaps, more bad days than good ones, and nothing about the occupation shields him from the stress and distress of counsel and litigants in their most trying moments. He is conscious that he is the one person involved whose presence, in itself, should have a benign effect on the course of trial, and that if he cannot fulfill that role, the end of an impartial trial may be lost. Ideally he would always discreetly and circumspectly subordinate his opinions and emotions so as to display courtesy and impartiality to counsel and litigants notwithstanding their actions.

It is not always possible; and it does not follow that every deviation from the ideal requires a new trial. Few verdicts would ever stand were that so. Rather, recognizing both human fallibility and the stress of trial, each case is to be reviewed in its entirety to determine whether an atmosphere of

prejudice has crept in which may have deprived the appellant of a fair trial. *People v Neal,* 290 Mich 123, 129; 287 NW 403, 407 (1939), *People v Cole,* 349 Mich 175, 200; 84 NW2d 711, 720–721 (1957), *People v London,* 40 Mich App 124, 127–130; 198 NW2d 723, 725–726 (1972). We have carefully reviewed this record and note that counsel consistently provoked and deserved reprimand; that only the one instance occurred in the presence of the jury and that it was immediately, on the court's own volition, followed by a cautionary instruction; that the trial judge frequently and carefully instructed the jury on the necessity of avoiding personalities and prejudice in discharging its duties; that defendant was given considerable latitude in the conduct of the defense and did in fact suffer no limitation in attacking the prosecution's case or presenting a defense thereto. We conclude that he had a fair trial and that his conviction should be affirmed.

The final assignments of error relate to the sentencing of defendant. Asserting personal animus by the court towards defense counsel, defendant sought the disqualification of the trial judge from sentencing. Denial of the disqualification motion, it is asserted, operated to deprive defendant of effective assistance of counsel. It is contended that allocution from counsel, for whose integrity, veracity and character the judge has no respect, could not possibly be fairly heard or objectively evaluated. But it is not counsel but the client whose case is being weighed. We suggest that if counsel had real doubts about his role in allocution, he would have better served the interests of his client by suggesting substitution of counsel than by seeking disqualification of the court. More importantly, allocution is not a matter of emotion

but of logic; defense counsel did prevail on disputed questions time after time during the course of trial by effective and professional representation of his client, notwithstanding the trial court's expressed opinions about counsel's conduct on other occasions. The denial of the disqualification motion was not error.

There is an issue of greater merit, regarding the sentencing, however, which was raised and preserved for appeal and involves questions implicit in recent decisions and the 1973 amendment of GCR 1963, 785.

Defendant maintained that both the presentence report and report from a psychiatric clinic furnished therewith contained mistakes and improper material. Specifically, it was contended that the reports disclosed alleged criminal activity not resulting in conviction and of which defendant was not guilty; misstatements as to number of arrests; false statements that defendant was a heroin user and addict; inaccurate family, personal and social history; and unsubstantiated psychiatric conclusions. We are faced, thus, with questions as to what may properly be included in a presentence report and how the court is to deal with defense claims of improper or inaccurate content.

The Code of Criminal Procedure provides for the preparation of a presentence report for submission to the sentencing judge before the sentencing of any person convicted of a felony (MSA 28.1144; MCLA 771.14) directing that:

"[T]he probation officer shall inquire into the antecedents, character and circumstances of such person * * * ."

Nothing in the statute purports to limit "circumstances of such person", or exclude some circum-

stances; and, certainly, the circumstances of other criminal activity would be considered relevant unless prohibited by some other statute, court rule or rule of law.

GCR 1963, 785.12, dealing with presentence reports, contains no limitation on content, but provides for presentence report disclosure and further provides:

"Both parties shall be given an opportunity at time of sentencing to respond to the presentence report and to explain or controvert any factual representations disclosed."

No other statute or court rule purports to limit the content of the presentence report or the means of dealing therewith. There is, however, case precedent limiting such reports as a matter of due process. A recent Michigan opinion dealing at length with presentence reports, *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974), follows the rule adopted in other states that, "[t]here are no formal limitations on the contents of the presentence report, but there are limitations dictated by due process", *Lee, supra,* at 636. *Lee* further approves inclusion of information in the presentence report beyond that admissible at trial.

The precise question in *Lee* was whether resentencing was mandated because the presentence report contained information as to pending criminal charges against the defendant, the Court concluding that the mere recitation of such facts in the presentence report was not prejudicial and did not require resentencing. *Lee* does not deal directly with the situation in which the presentence report contains flat statements of complicity by the defendant in criminal activity, admissions of such complicity allegedly made by the defendant, or

references to criminal charges which the defendant asserts are erroneous, were dismissed or resulted in acquittal.

In *Williams v New York,* 337 US 241; 69 S Ct 1079; 93 L Ed 1337 (1948), the trial judge, in pronouncing a death sentence, commented on the defendant's extensive record. The statement of the judge indicated that the presentence report contained information about criminal conduct of defendant other than as established by court convictions, *i.e.,* that defendant had confessed to some offenses and had been identified as the perpetrator of others. The claim of defendant that consideration of such offenses was violative of due process was denied by the Court, it being noted that the accuracy of the statements made by the trial judge was challenged neither by appellant nor his counsel, nor was the trial judge asked to disregard any of the facts recited or to afford appellant a chance to refute or discredit any of the facts by cross-examination or otherwise.

Of the three possible resolutions of the problem that arises when a defendant, as here, denies the accuracy of reports of other criminal activity or other material contained in the presentence report, no decision is found in which it is held that the court can *never* consider material, the accuracy of which is denied by defendant, unless that is the result to be derived from *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972), discussed hereinafter.

There is authority in some states that the court may consider such allegations in the presentence report and weigh the defendant's denial thereof against the apparent source of such facts as indicated in the presentence report. More widely, however, such activity has been held properly consid-

ered by the sentencing court if the defendant has
been afforded an opportunity for hearing on the
accuracy thereof. Thus, some statutes expressly
provide for a sentencing proceeding, or for a hear-
ing in aggravation or mitigation of sentence, *e.g.,*
California, Illinois, Arizona and North Carolina.
See *State v Castano,* 89 Ariz 231; 360 P2d 479
(1961), *State v Cooper,* 238 NC 241; 77 SE2d 695
(1953), *People v Mann,* 27 Ill 2d 135; 188 NE2d 665
(1963), *cert den* 374 US 855; 83 S Ct 1923; 10 L Ed
2d 1075. Other states, without such statutory pro-
ceedings, have followed the direction of *Williams v
New York, supra,* holding that there is no depriva-
tion of due process in the court's consideration of
other criminal conduct if the defendant has been
given an opportunity to refute the same, *e.g.,
Driver v State,* 201 Md 25; 92 A2d 570 (1952),
*Commonwealth v Johnson,* 348 Pa 349; 35 A2d 312
(1944). A similar result was reached in *State v
Jochim,* 55 ND 313; 213 NW 484 (1927), which
appears representative of a general rule that the
trial court in sentencing may consider evidence of
other criminal activity brought forth in the princi-
pal trial.

Which brings us to *People v Grimmett, supra,*
seemingly at odds with that rule. Grimmett was
involved, with others, in the armed robbery of a
grocery store in the course of which the owner was
killed and a customer was wounded. Grimmett was
charged with assault with intent to commit mur-
der of the customer and also with the murder of
the owner. Convicted of the assault, the court
which heard the trial testimony describing the
entire series of events, including the shooting of
the deceased owner, said in sentencing that de-
fendant was certainly the same person who mur-
dered the owner.

*Grimmett* concluded that this was improper and required resentencing. No authority was cited for the proposition. The opinion simply recites that a court may consider a defendant's prior convictions, public records concerning the defendant or even defendant's admissions, citing *People v Losinger,* 331 Mich 490; 50 NW2d 137 (1951), *cert den,* 343 US 911; 72 S Ct 644; 96 L Ed 1327 (1952). No other precedents are cited and the basis of the court's reasoning is unclear.

*People v Lee, supra,* distinguishes *Grimmett,* saying: "Moreover, there is no evidence that the court drew false inferences from the presentence report as in *People v Grimmett.* * * * We will not sanction a judge's making an assumption of guilt of other crimes on the basis of the presentence report." Certainly if the reason for the holding in *Grimmett* was an erroneous fact, there was a due process denial. See *Townsend v Burke,* 334 US 736; 68 S Ct 1252; 92 L Ed 1690 (1948), *People v Walters* (Docket No. 19757, decided January 13, 1975 [unreported]). But when the trial judge heard res gestae testimony showing the offense, how can there be a factual error of the kind condemned in *Townsend v Burke* or in *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972), where the court relied on infirm convictions?[2] *Lee* also cites approvingly *People v Zachery Davis,* 41 Mich App 683; 200 NW2d 779 (1972). It should be noted, however, that the opinion in *Davis* actually finds the lack of due process in the consideration by the sentencing judge of alleged offenses which were denied by the defendant "without proof that they had in fact been committed". *People v Perine,* 7 Mich App 292; 151 NW2d 876 (1967), *Noland v*

---

[2] *Note People v Moore,* 391 Mich 426; 216 NW2d 770 (1974), establishing a hearing procedure for determining *Tucker* claims.

*People,* 485 P2d 112 (Colo, 1971), and *Baker v State,* 3 Md App 251; 238 A2d 561 (1968).[3]

In attempting to resolve the impact of *Grimmett,* we look to the rationale of *Lee* that due process simply requires the defendant to have an opportunity to refute any information contained in the presentence report. More specifically, in *Lee,* the Court dealt with the disclosure of pending criminal charges not in terms of exclusion but in terms of affording the defendant the opportunity to challenge such accusation:   .

> "The realistic and honest policy is to recognize that the judges will have this information in one way or another and to provide the defendant with the opportunity, at his instance, to challenge or explain such pending charges as best he can, if he deems it advisable." *People v Lee,* 391 Mich 618, 636; 218 NW2d 655 (1974).

We are assisted by *People v Martin,* 393 Mich 145; 224 NW2d 36 (1974), in which, without citation, the Court found no error in inclusion in the presentence report of reference to assaultive conduct of the defendant. The opinion notes that there was no proof of inaccurate material in the report, thus sanctioning the inclusion of accurate reference to criminal acts which have not resulted in conviction.

GCR 1963, 785.12 is consistent with the procedures in other states permitting consideration of any pertinent facts in the presentence report if the defendant has an opportunity to explain or controvert such facts. We are of the conclusion that a

---

[3] The court also noted that reports of such offenses were not a basis for reversal in *People v Butler,* 36 Mich App 615; 193 NW2d 904 (1971), because, in contrast to *Davis* and *Perine, Butler* did not deny such activity at the time of sentence. *Accord: People v Potts,* 55 Mich App 622; 223 NW2d 96 (1974).

reasonable view of *Grimmett*, in the light of *Lee* and *Martin*, is that reference to other criminal activity, for which no conviction has resulted, may be included in the presentence report and considered by the court, provided the defendant does have the opportunity for refutation provided by GCR 1963, 785.12. This is consistent with the Federal standards of due process set forth in *Williams v New York, supra*, and the decisions from other states.

We are left, then, only with the question of procedurally implementing GCR 1963, 785.12. How is the trial judge to proceed when faced with a defense claim of inaccuracies in the presentence report? Here, the sentencing judge had read the presentence report, consulted with two other members of the Recorder's Court who had also read the presentence report, and had apparently fixed in his mind the sentence to be imposed. Defense counsel made the following claims in argument to the court: (1) a part of the presentence report, the report of a psychiatric clinic, was not disclosed to counsel until the hour set for sentencing;[4] (2) the presentence report was inaccurate in various particulars enumerated for the court; (3) various persons, the source of presentence information, should be presented for cross-examination by the defense; (4) other persons, who could give pertinent information and were in the courtroom, should be allowed to testify on defendant's behalf; and (5) having read the allegedly inaccurate presentence report, the trial judge should disqualify himself from the sentencing of defendant. The court, in

---

[4] We suggest that disclosure of the presentence report should be made sufficiently before the date of sentencing to allow counsel to review important facts with the defendant and to investigate claimed errors. It is not unheard of for corrections or additions to the presentence report to thus be made for the benefit of the sentencing judge.

response, merely denied the defense requests without comment and imposed sentence. No indication was given as to what factors were the basis for the sentence and, thus, whether the disputed points were considered and, if so, what weight was given to them.

While we find error requiring resentencing, that error is not to be found from the refusal of the trial judge to hold an evidentiary hearing. This writer, in the past, opposed the adoption of a more sweeping version of GCR 1963, 785.12, in apprehension that it would end traditional sentencing procedures and impose a formalistic, adversary trial of sentencing factors. We believe the language of the rule, as adopted, was deliberately chosen to avoid that result and to preserve to the trial judge his traditional discretion in sentencing procedures.[5]

Thus, Rule 785.12 is markedly different from the statutes of those states requiring sentencing hearings, and from the *Sentencing Alternatives and Procedures,* ABA Project on Minimum Standards for Criminal Justice[6] which contemplate an evidentiary hearing on disputed presentence report facts.

---

[5] To hold that an evidentiary hearing is required in every instance where the defendant denies the validity of presentence report content would tend to limit presentence reports to facts susceptible of objective proof and eliminate subjective facts which may be of equal or greater import. A "safe", truncated report, reducing sentencing data to vital statistics and prior criminal behavior, has little value. And consider the further question presented: If an evidentiary hearing were held to be a due process right, what would be the scope of the hearing: disputed facts or all facts pertinent to sentencing? And how would the issues be framed? Who would have the burden of proof and what would be the measure of the burden? Would defendant have the right of confrontation and cross-examination of fact sources? Would defendant have the right to compulsory process and to the services of experts?

[6] *See Sentencing Alternatives and Procedures,* ABA Project on Minimum Standards for Criminal Justice, 4.4(c), 4.5(b), 5.3(d), 5.3(f), 5.4(a) and 5.4(b).

Had a complete sentencing trial or an evidentiary hearing on disputed facts been intended, it would have been easy to say so. Rather, Rule 785.12 merely gives the defendant the opportunity:

"at time of sentencing to *respond* to the presentence report and to *explain or controvert* and factual representations disclosed." (Emphasis added.)

None of the words employed, "respond", "explain" or "controvert", contemplate an adversary trial. "Controvert" connotes "opposing by argument".

GCR 1963, 785.12, leaves to the trial judge not only discretion to consider and weigh the contents of the presentence report, objective and subjective, but also discretion as to the means of implementing the due process duty of ascertaining, when the objection is raised, that the defendant is not prejudiced in sentencing by false information. *United States v Sanders,* 438 F2d 344 (CA 5, 1971). While not compelled to hold an evidentiary hearing, in the exercise of his discretion, he may do so. He may accept unsworn statements of the defendant. He may ascertain that the disputed matter is not relevant to his decision, or is of little weight, or could be safely disregarded without regard to its accuracy in light of other facts. There are many ways, in the exercise of his discretion, that he may meet the problem.

Here, unfortunately, the trial judge simply did not respond to the defense claim in any way and thus abdicated his discretion. The failure to exercise discretion, when called upon to do so, is error. *People v Lessard,* 22 Mich App 342; 177 NW2d 208 (1970), *United States v Espinoza,* 481 F2d 553 (CA 5, 1973). We remand for resentence accordingly. We see no valid reason for disqualification of the trial judge on remand. The business of judges, after all, does involve disputed claims.