# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JALEN RASHAAD CONNER,

        Defendant-Appellant.

UNPUBLISHED
February 23, 2016

No. 323508
Wayne Circuit Court
LC No. 14-001129-FJ

Before: STEPHENS, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of carjacking, MCL 750.529a, armed robbery, MCL 750.529, unlawful driving away of an automobile (UDAA), MCL 750.413, assault with a dangerous weapon (felonious assault), MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 13 to 20 years' imprisonment for the carjacking and armed robbery convictions, one to five years' imprisonment for the UDAA conviction, one to four years' imprisonment for the felonious assault conviction, and two years' imprisonment for the felony-firearm conviction. We affirm defendant's convictions, but remand to the trial court for resentencing for reasons discussed herein.

## I. SUFFICIENCY OF EVIDENCE

Defendant first argues that the evidence presented at trial was insufficient to support his convictions. We disagree.

A challenge to the sufficiency of evidence is reviewed de novo, *People v Harverson*, 291 Mich App 171, 175-176; 804 NW2d 757 (2010), but "a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict," *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). This Court must review the evidence in a light most favorable to the prosecution and determine whether the jury could have found each element of the charged crimes proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

The sufficient evidence requirement is a part of every criminal defendant's due process rights. *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970); *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992). "It is an attempt to give 'concrete substance' to

-1-

those rights, by precluding irrational jury verdicts." *Wolfe*, 440 Mich at 514, citing *Jackson v Virginia*, 443 US 307, 315; 99 S Ct 2781; 61 L Ed 2d 560 (1979). In determining whether sufficient evidence was presented to sustain a conviction, the question is not whether *any* evidence existed that could support the convictions, but rather, whether a rational trier of fact could find that the evidence proved each of the essential elements of each crime beyond a reasonable doubt. *Wolfe*, 440 Mich at 513–514, citing *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979) (emphasis added). However, all "circumstantial evidence and reasonable inferences arising from [the] evidence can constitute satisfactory proof of the elements of a crime." *People v Lee*, 243 Mich App 163, 167–168; 622 NW2d 71 (2000) (citation omitted).

In order to sustain a carjacking conviction, the prosecution must prove (1) that the defendant took a motor vehicle from another person, (2) that the defendant did so in the presence of that person, a passenger, or any other person in lawful possession of the motor vehicle, and (3) that the defendant did so either by force or violence, by threat of force or violence, or by putting the other person in fear. MCL 750.529a(1); *People v McGee*, 280 Mich App 680, 683-685; 761 NW2d 743 (2008). The essential elements of UDAA are (1) driving a vehicle away, (2) without authority or permission. *People v Cain*, 495 Mich 874, 874; 838 NW2d 150 (2013). For an armed robbery conviction, the prosecution must prove (1) an assault, (2) a felonious taking of property from the victim's person or presence, and (3) that defendant was armed with a weapon as described in the armed robbery statute, MCL 750.529. *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014). Similarly, the elements of felonious assault are "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Bosca*, 310 Mich App 1, 7; 871 NW2d 307 (2015) quoting *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). For both armed robbery and felonious assault, the assault element "is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *People v Nickens*, 470 Mich 622, 628; 685 NW2d 657 (2004) (internal quotations omitted). Finally, a conviction of felony-firearm requires proof that defendant possessed a firearm during the commission of a felony or the attempt to commit a felony. *Bosca*, 310 Mich App at 8.

Defendant does not argue that the prosecution failed to present sufficient evidence to prove each crime. Rather, defendant argues (1) that the prosecution failed to present sufficient evidence to prove defendant's identity as the perpetrator of these crimes, and (2) that there was insufficient evidence to support defendant's felonious assault conviction because it is impossible to place a four-month-old infant in reasonable apprehension of an immediate battery.

A.    SUFFICIENT EVIDENCE OF IDENTITY

Identity is an essential element of every crime that must be proven beyond a reasonable doubt. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Identity may be established by circumstantial evidence and reasonable inferences drawn from the evidence. *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999). When a fingerprint is found at the scene of the crime under such circumstances that it could only have been made at the time

of the commission of the crime, it is sufficient to establish identity. *People v Himmelein*, 177 Mich App 365, 374–375; 442 NW2d 667 (1989).

The fact that defendant's fingerprint was found on the passenger's side door of the complainant Jermieka Humphrey's vehicle was sufficient, on its own, to support the jury's finding that defendant was the perpetrator of the crimes beyond a reasonable doubt. Humphrey testified that she had never seen defendant prior to the incident, and that she watched defendant enter the passenger side of her car that evening. Additionally, Humphrey's car was located and impounded the following day, indicating that defendant would have had to leave the fingerprint within the 24-hour period immediately following its theft. The physical fingerprint, Humphrey's corroborating testimony, and the fact that Humphrey's car was impounded less than 24 hours after the incident, were enough to support the jury's rational inference that defendant's fingerprint could only have been left at the time of the commission of the crime.

While defendant argues on appeal that there are other explanations for how his fingerprints were found in Humphrey's car, he has not provided any explanations or pointed to any evidence presented at trial that would support an inference other than that he left his fingerprints on the car during his commission of the charged crimes. Indeed, the only mention of a different possible explanation was in defense counsel's opening statement and closing argument, when he suggested that perhaps Willie Davis, defendant's cousin who had previously been convicted of carjacking for the same incident, had brought the car to defendant's house the day after the theft to show it off. However, there was no evidence presented at trial that would support this theory.

While defendant's fingerprint is sufficient to establish his identity as the perpetrator of the charged crimes, Humphrey's identification of defendant as the perpetrator provides further support for defendant's convictions. Positive identification by a witness may be sufficient to support a conviction of a crime. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). The question is one of witness credibility, which is to be assessed by the trier of fact. *People v Lemmon*, 456 Mich 625, 646; 576 NW2d 129 (1998). Although she admitted that three years had elapsed between the incident and her positive identification of defendant as the perpetrator during a photographic line-up, Humphrey testified that she would never forget defendant's face. She explained that she had seen defendant when she made eye contact with him as he passed her car, directly under the streetlight, prior to the incident. She also testified that she never took her eyes off defendant as he subsequently held a gun to her four-month-old son, BW, and identified defendant in court as one of the two men that had stolen her car keys at gunpoint. The jury was free to believe or disbelieve, in whole or in part, any of the testimony presented at trial. *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). Here, the jury had sufficient evidence to conclude that Humphrey positively identified defendant, even after three years, based on her memory of such a traumatic occurrence.

Defendant also argues that Humphrey's identification testimony should not have been admitted because the photographic line-up at which Humphrey identified defendant was "suggestive and conducive to irreparable mistaken identification," taking place only after the unidentified fingerprints discovered on Humphrey's car were discovered to belong to defendant. Even if defendant had preserved this issue by filing a motion to suppress testimony regarding Humphrey's identification of defendant at the photographic line-up, see *People v Lee*, 391 Mich

618, 626-627; 218 NW2d 655 (1974), defendant's claim is wholly without merit. Presumably, defendant's argument is that Humphrey identified defendant *because* she knew that his fingerprints had been identified. However, defendant acknowledges in his brief on appeal that the record does not support this assumption. Indeed, defendant presents no evidence that would support a claim that the photographic line-up was suggestive or that Humphrey's identification was influenced by any external factors. In any case, an improper photographic display is relevant to the weight of identification testimony rather than admissibility. *People v Gray*, 457 Mich 107, 117; 577 NW2d 92 (1998). Additionally, even if the line-up identification was inadmissible, the fact that Humphrey directly observed defendant during his commission of the crime provided a sufficient independent basis for admission of her in-court identification. *Id*.

Again, the credibility of identification testimony is a question for the trier of fact that this Court will not resolve anew. *Davis*, 241 Mich App at 700. Humphrey testified that her in-court identification was based on her memory of defendant's face and not on the photographic line-up. The jury was properly instructed on how to determine the credibility of witnesses, and is presumed to have followed that instruction. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). There is no reason to question the judgment of the jurors, who apparently credited Humphrey's memory of this traumatic event. Viewed in the light most favorable to the prosecution, Humphrey's testimony was sufficient to support a rational trier of fact's conclusion that the evidence established defendant's identity as the perpetrator of the charged crimes beyond a reasonable doubt. *Wolfe*, 440 Mich at 513–514.

### B.     FELONIOUS ASSAULT ON AN INFANT

With respect to the felonious assault charge, defendant also argues that insufficient evidence was presented to support the jury's finding that an assault was committed on BW, a four-month-old infant. Defendant reasons that because a four-month-old infant is incapable of comprehending the meaning of a handgun, BW could not have been placed in fear and the jury could not find that an assault had occurred. We disagree.

As previously noted, to convict a defendant of felonious assault, the prosecution must, among other elements, prove that the defendant either intended to injure the victim or intended to put the victim in reasonable apprehension of an immediate battery or injury. *Nickens*, 470 Mich at 628. Importantly, the necessary element is "intent" of the perpetrator, and not, as defendant argues, the reasonable fear of the victim. "Intent is a mental attitude made known by acts" and has been defined as "a secret of the defendant's mind," which can be ascertained through words or actions, with recognition that a defendant's actions often "speak louder than words." *People v Strong*, 143 Mich App 442, 452; 372 NW2d 335 (1985) (citation omitted). The jury may draw the inference as to the intent with which a particular act was done as they draw all other inferences, from any fact in evidence that to their minds fully proves its existence. *People v Medlyn*, 215 Mich App 338, 344; 544 NW2d 759 (1996). The inquiry should therefore focus on the objective actions and demeanor of the perpetrator in light of the circumstances to determine whether they would have created a fear or apprehension of immediate injury on the part of a reasonable person confronted with similar conduct. Because the law recognizes the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to sustain a conclusion that a defendant entertained the requisite intent. *People v Ericksen*, 288 Mich App 192, 196-197; 793 NW2d 120 (2010).

There was sufficient evidence presented to support the jury's conclusion that defendant possessed the requisite intent for felonious assault. Humphrey testified that defendant stood on the porch steps and pointed a handgun directly at her four-month-old son, so close that the handgun was "practically in the carseat [sic]." Humphrey also testified that defendant grabbed at her son's car seat when she began to fidget with her key ring. The jury could certainly have concluded that a reasonable person would fear an immediate battery with a handgun pointed in their direction at close range while being pulled or jerked. It would also be reasonable to infer that defendant's act of pointing a handgun at an individual was intended to place that individual in fear. Infants can perceive and do respond to objects placed in close proximity. While infants might not be able to verbally express fear, it is not uncommon to hear the wails of infants in response to distress. Such occurrences defeat any claim that an infant cannot have a fearful reaction to a foreign object in close proximity to his or her body. It was the jury's province to determine whether a 15-year-old boy might actually believe that pointing a gun at a four-month-old infant would place the infant in fear, and here they answered in the affirmative. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Especially when viewed in a light most favorable to the prosecution, there was sufficient evidence presented to support the jury's conclusion that defendant intended to place BW in fear, regardless of whether BW was actually placed in fear, and to support defendant's felonious assault conviction beyond a reasonable doubt.

## II. GREAT WEIGHT OF EVIDENCE

Next, defendant argues that his convictions were against the great weight of the evidence presented at trial. Again, we disagree.

Defendant failed to preserve this issue by moving for a new trial with the lower court. *People v Norman*, 184 Mich App 255, 257; 457 NW2d 136 (1990). This Court reviews unpreserved challenges based on the great weight of the evidence for plain error affecting the defendant's substantial rights. *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014). An unpreserved claim of error warrants reversal under this standard when the defendant can show (1) an error, (2) that the error was clear or obvious, and (3) that the error affected his substantial rights by causing him prejudice. *People v Borgne*, 483 Mich 178, 196-197; 768 NW2d 290 (2009), aff'd 485 Mich 868 (2009). Further, reversal is warranted only when the plain error resulted in the conviction of an innocent defendant or "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id*. at 197.

A verdict is against the great weight of the evidence when the evidence presented preponderates so heavily against the verdict that it would be a miscarriage of justice to let the verdict stand. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). Here, defendant's great-weight argument is merely a restatement of his challenge to the legal sufficiency of the evidence. Whether the evidence was sufficient to sustain a conviction and whether the verdict was against the great weight of the evidence are two different questions. *People v Brown*, 239 Mich App 735, 746 n 6; 610 NW2d 234 (2000). However, when a defendant's "great weight" argument is premised on the claim that insufficient evidence existed to support the verdict, the argument may be rejected when sufficient evidence is found to exist. *Id*. at 745–746. As previously indicated, there was sufficient evidence to support the jury's

verdict on each count. Thus, because defendant's argument here parallels his argument that there was insufficient evidence to support the verdict, we reject it for the same reasons.

### III. IMPROPER ASSESSMENT OF SENTENCING GUIDELINES

Defendant also argues that he is entitled to resentencing because there was no evidence to support the trial court's assessment of PRV 4, PRV 6, OV 10 and OV 13, and because the trial court assessed offense variables OV 9, OV 10, and OV 13 on the basis of impermissible judicial fact-finding, contrary to the Supreme Court's decision in *Alleyne v United States*, 570 US ___; 133 S Ct 2151, 2158; 186 L Ed 2d 314 (2013). On these claims of sentencing error, we agree in part and disagree in part.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013); see also *People v Steanhouse*, ___ Mich App ___, ___; ___ NW2d ___ (2015); slip op at 19 (explaining that "the standards of review traditionally applied to the trial court's scoring of the variables remain viable" after *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015)). Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute is a question of statutory interpretation, which this Court reviews de novo. *People v Petit*, 466 Mich 624, 627; 648 NW2d 193 (2002). This Court also reviews de novo, as a question of law, the proper interpretation of the sentencing guidelines. *People v Gullett*, 277 Mich App 214, 217; 744 NW2d 200 (2007).

A defendant is entitled to be sentenced according to accurately assessed guidelines and on the basis of accurate information. *People v McGraw*, 484 Mich 120, 131; 771 NW2d 655 (2009). A sentence is invalid when a sentencing court relies on an inappropriate guidelines range. *Id*. A defendant is entitled to a remand for resentencing when the trial court made an error in assessing the sentencing guidelines or relied on inaccurate information to determine defendant's sentence. *People v Francisco*, 474 Mich 82, 88-89; 711 NW2d 44 (2006).

### A. ASSESSMENT OF PRV 4 AND PRV 6

Defendant first argues that the trial court erred in assessing PRV 4 at two points because defendant had no prior juvenile offenses at the time of the sentencing offense. PRV 4 is "prior low severity juvenile adjudications." MCL 777.54(1). When "[t]he offender has 1 prior low severity juvenile adjudication," PRV 4 must be assessed at two points. MCL 777.54(1)(e). In contrast, when "[t]he offender has no prior low severity juvenile adjudications," PRV 4 must be assessed at zero points. MCL 777.54(1)(f). Under MCL 777.54(2), "prior low severity juvenile adjudication" means "a juvenile adjudication . . . if the order of disposition was entered before the sentencing offense was committed."

The trial court improperly assessed PRV 4 at two points. Defendant's PSIR indicates only one prior juvenile adjudication; a plea-based conviction for unlawful use of a motor vehicle occurring more than one year after the sentencing offense was committed. Because defendant had no prior low severity juvenile adjudications when the sentencing offense was committed, PRV 4 should properly have been assessed at zero points.

-6-

Defendant also argues that the trial court erred in assessing five points for PRV 6 because he was not on probation at the time of the offenses. "Prior record variable 6 is relationship to criminal justice system." MCL 777.56(1). Five points must be assessed when "[t]he offender is on probation or delayed sentence status or on bond awaiting adjudication or sentencing for a misdemeanor," MCL 777.56(1)(d), and zero points must be assessed when "[t]he offender has no relationship to the criminal justice system," MCL 777.56(1)(e). PRV 6 is assessed based on the defendant's relationship to the criminal justice system at the time he committed the sentencing offense. *People v Young*, 276 Mich App 446, 454; 740 NW2d 347 (2007).

We agree that PRV 6 should have been assessed at zero points because, at the time of the sentencing offenses, defendant had no prior misdemeanor convictions or juvenile convictions and was not on probation or on bond. Defendant's PSIR lists only one juvenile offense, which was committed more than a year after the sentencing offenses. Although defendant's PSIR indicates that defendant was under "Juvenile Court Supervision" at the time of the sentencing offense, this notation is clearly a mistake. The sentencing court acknowledged the erroneous assessment of 10 points for a misdemeanor and reassessed PRV 6 at 5 points. However, it failed to notice the inconsistency between the date of defendant's prior juvenile offense and the PSIR drafter's notation that defendant was under supervision at the time of the sentencing offense, indicating that defendant's probation for the unlawful use of a motor vehicle offense somehow ran a year prior to its commission. Because defendant had no relationship to the criminal justice system prior to or during the commission of the sentencing offense, PRV 6 should be assessed at zero points.

The trial court improperly assessed defendant's PRVs to calculate a total of 27 points, which placed defendant in PRV level D of the sentencing grid for Class A offenses. MCL 777.62. A reduction of PRV 4 from two points to zero points, and a reduction of PRV 6 from five points to zero points to account for the trial court's erroneous assessment of these two variables brings defendant's PRV total to 20 points and moves him from PRV level D to PRV level C of the sentencing grid for Class A offenses. MCL 777.62. The trial court sentenced defendant to 13 to 20 years' imprisonment under the misapprehension that the sentencing guidelines called for a minimum sentence range of 126 to 210 months, when the sentencing guidelines call for a minimum sentence of 108 to 180 months for a defendant falling in the grid for PRV Level C offenders. MCL 777.62. Because defendant's sentence is based on an inaccurate calculation of the guidelines range, defendant is entitled to a remand for resentencing. *Francisco*, 474 Mich at 92.

Although the conclusion that defendant is entitled to resentencing on the basis of the trial court's erroneous assessment of PRV 4 and PRV 6 renders analysis of defendant's additional sentencing error claims unnecessary, we address each of defendant's claims separately for completeness.

### B. ASSESSMENT OF OV 9, OV 10 AND OV 13

Relying on *Alleyne*, 570 US ___, defendant argues that the trial court's assessments of OV 9, OV 10, and OV 13 were erroneous because those scoring decisions were not based on facts found by the jury or admitted by defendant, but found by the judge at sentencing. Our Supreme Court recently determined in *Lockridge*, 498 Mich at 364, that *Alleyne* applied to render

this state's sentencing guidelines unconstitutional only to the extent that they "*require*[d] judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range." Under *Lockridge*, it was the *mandatory* nature of the guidelines that rendered fact-finding by a preponderance of the evidence by the judge at sentencing, rather than by a reasonable doubt by the jury at trial, unconstitutional. *Id*. at 364-365. The *Lockridge* Court remedied the constitutional violation by severing MCL 769.34(2) only to the extent that it made the guidelines mandatory. *Id*. at 364, 391. A sentencing court is still required to determine the applicable guidelines range and take it into account when imposing a sentence, and "the highest number of points possible *must* be assessed for all OVs, *whether using judge-found facts or not*." *Id*. at 392 n 28 (emphasis added). In other words, because the guidelines are no longer mandatory, facts found at sentencing that were not admitted by the defendant or proven beyond a reasonable doubt continue to support the assessment of OVs that raise the "advisory" minimum sentence range by a preponderance without rendering the trial court's ultimate sentence unconstitutional. Therefore, the trial court's reliance on judge-found facts to assess OV 9, OV 10, and OV 13 was not improper, and that fact alone would not affect the constitutionality of defendant's final, advisory, sentencing guidelines range.

However, the *Lockridge* Court held that, in cases where the defendant was sentenced on judge-found facts prior to its decision to render the guidelines advisory only, the defendant's Sixth Amendment rights had been violated by an unconstitutional constraint on the judge's sentencing discretion. *Lockridge*, 498 Mich at 395. In such cases, the defendant is entitled to a remand for determination of whether his sentence was appropriate when (1) he can demonstrate that his guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment, and (2) his sentence was not subject to an upward departure. *Id*. Here, the trial court sentenced defendant under the previously mandatory statutory sentencing guidelines and did not depart from those guidelines. Thus, the question is whether defendant's minimum sentence range was actually constrained by a Sixth Amendment violation. Unconstitutional constraint has occurred when the facts admitted by defendant or supported by the jury verdict were insufficient to assess the minimum number of OV points necessary for defendant's total assessment to place him in the cell of the sentencing grid under which he was sentenced. *Id*.

Though it is an unconstitutional error, a sentence determination that contravenes *Alleyne* is not a structural defect. *Lockridge*, 498 Mich at 392 n 9, citing *Washington v Recuenco*, 548 US 212; 126 S Ct 2546; 165 L Ed 2d 466 (2006). Therefore, a challenge to such a sentence is subject to harmless error review. *People v Stokes*, ___Mich App ___, ___; ___ NW2d ___ (2015); slip op at 9-10.

OV 9

With respect to the trial court's assessment of OV 9, defendant argues that the trial court improperly relied on judge-found facts to assess 10 points. Specifically, defendant argues that the trial court erred in assessing OV 9 at 10 points because the jury verdict reflected only one victim of defendant's armed robbery conviction. We agree.

"Offense variable 9 is number of victims" and is assessed at 10 points when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death." MCL 777.39(1)(c). The

-8-

trial court calculated defendant's sentencing guidelines range for his armed robbery conviction only. The information specifies Humphrey as the victim of armed robbery, and both the jury instructions and jury verdict form made clear that Humphrey was the only victim to be considered with respect to this crime. Thus, although the jury's guilty verdict on the felonious assault charge necessitated the conclusion beyond a reasonable doubt that BW was a "victim" of that crime, it did not support the conclusion that BW was an additional victim of the armed robbery. Because the trial court's assessment of OV 9 at 10 points was based on facts not admitted by defendant or found beyond a reasonable doubt by the jury, these points should be subtracted from defendant's total score in order to determine whether the trial judge's sentencing decision was unconstitutionally constrained. *Lockridge*, 498 Mich at 395.

Although defendant does not dispute the sufficiency of the evidence supporting an assessment of OV 9 at 10 points, we note that the trial court's assessment of OV 9 was appropriate in light of the circumstances presented at trial. Each person placed in danger of injury or death should be counted as a "victim." *Gullett*, 277 Mich App at 217. "A person may be a victim under OV 9 even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may suffice to count the person as a victim." *People v Gratsch*, 299 Mich App 604, 624; 831 NW2d 462 (2013), vacated in part on other grounds by 495 Mich 876 (2013).

Though defendant was charged and convicted for the armed robbery and carjacking offenses only with respect to Humphrey, the trial court did not err when it considered whether BW, who was present during the commission of the offense, constituted a "victim" for purposes of OV 9. Humphrey testified that defendant had his handgun pointed directly at BW during the incident. This testimony is sufficient to support the conclusion that BW was placed in danger of serious injury or death during the armed robbery and assessment of OV 9 at 10 points.

OV 10

With respect to OV 10, defendant argues both that the trial court lacked evidence to assess OV 10 at 15 points by a preponderance, and that the trial court improperly relied on facts not admitted by defendant or found by the jury at trial. We agree that the trial court's assessment of OV 10 was based on judge-found facts, but disagree that that the evidence was insufficient to support the trial court's assessment of OV 10 by a preponderance.

"Offense variable 10 is exploitation of a vulnerable victim." MCL 777.40(1). OV 10 must be assessed when "[p]redatory conduct was involved." MCL 777.40(1)(a). Whether defendant engaged in predatory conduct was not a consideration of the jury or an element necessary to support any of defendant's convictions. Because defendant did not admit to any preoffense conduct or "predatory conduct" specifically, the trial court's assessment of this offense variable was not supported by facts admitted by defendant or proven to a jury beyond a reasonable doubt. Therefore, as with OV 9, these points should be subtracted from defendant's total score to determine whether the trial judge's sentencing decision was unconstitutionally restrained. *Lockridge*, 498 Mich at 395.

However, the trial court properly assessed OV 10 at 15 points for "predatory conduct" because the preponderance of the evidence was sufficient to support the conclusion that

-9-

defendant engaged in preoffense conduct designed to victimize a person. "Predatory conduct" is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). "Predatory conduct" includes those forms of "preoffense conduct" that are commonly understood as being "predatory" in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or "preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection." *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011), citing *People v Cannon*, 481 Mich 152, 162; 749 NW2d 257 (2008). Importantly, defendant's preoffense conduct need only be directed at *a* victim; it is not necessary that the conduct be directed at the ultimate victim of the crime. *Huston*, 489 Mich at 463. In *Huston*, our Supreme Court explained that lying in wait, armed, in anticipation of an armed robbery or carjacking, is sufficient "predatory conduct" to support an assessment of OV 10 at 15 points, even if the specific identity of a victim is unknown. *Id*.

In this case, there were sufficient facts presented to support the trial court's conclusion that defendant had engaged in predatory conduct. Humphrey testified that she first noticed defendant and his accomplice walking down the sidewalk at 11:00 p.m., and that one of the men made eye contact with her as they passed her car. She waited for them to walk down the street away from her before she exited her car. As she stopped to retrieve her son from the passenger's seat, she noticed that the two men had turned around and were coming back toward her. By the time she had reached her porch, the two men were directly behind her and pointing firearms in her direction. The circumstances surrounding this armed robbery and carjacking, including the men's "prowling" of the sidewalk waiting for a victim and the fact that they were armed and prepared, support the conclusion that this was not simply an opportunistic crime. Defendant and his accomplice were "lying in wait" for a victim, and the trial court properly assessed OV 10 at 15 points on this basis.

OV 13

Here also, defendant argues both that the trial court lacked evidence to establish assessment of OV 13 at 25 points by a preponderance, and that the trial court improperly relied on facts not admitted by defendant or found by the jury at trial. In this case, however, defendant's argument fails on both counts.

First, there was sufficient evidence to support, by a preponderance, the trial court's assessment of OV 13 at 25 points. "Offense variable 13 is continuing pattern of criminal behavior." MCL 777.43(1). Twenty-five points are to be assessed under OV 13 where "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c) (emphasis added). "[A]ll crimes within a 5–year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a).

Defendant was convicted of carjacking, armed robbery, and felonious assault, which are all classified under the sentencing guidelines as crimes against a person. MCL 777.16y. Although defendant argues that the trial court erred in scoring OV 13 at 25 points because all three convictions arose out of a single incident, MCL 777.43 does not limit the "trial court's ability to score more than one instance arising out of the same criminal episode." *People v Gibbs*, 299 Mich App 473, 488; 830 NW2d 821 (2013). "[M]ultiple concurrent offenses arising

from the same incident are properly used in scoring OV 13[.]" *Id*. at 488. Indeed, MCL 777.43(2)(a) mandates consideration of *all* crimes within a 5-year period. The trial court therefore did not err in assessing 25 points for OV 13.

Further, the assessment of OV 13 at 25 points was properly established based only on facts found beyond a reasonable doubt by the jury. The jury convicted defendant of five separate crimes, all arising out of the same criminal transaction. In other words, the jury found that defendant committed more than three crimes within a five-year period beyond a reasonable doubt. Therefore, the trial court properly assessed OV 13 at 25 points.

## C. MINIMUM SENTENCE SUBJECT TO UNCONSTITUTIONAL CONSTRAINT

The trial court assessed the guidelines only for defendant's armed robbery conviction. Armed robbery is a Class A offense. MCL 777.16y. Defendant's total OV score of 70 included the trial court's assessment of 10 points for OV 9, 15 points for OV 10, and 25 points for OV 13, and placed defendant within the cell of the sentencing grid for OV Level IV. As previously discussed, none of the facts underlying the assessment of OV 9 and OV 10 were admitted by defendant or found by a jury. A reduction of 25 points to account for the trial court's assessment of these two variables brings defendant's total OV score to 45 points, and places him squarely within the cell of the sentencing grid for OV Level III. Thus, the facts admitted by defendant or supported by the jury verdict were insufficient to assess the minimum number of OV points necessary for defendant's total assessment to place him in the cell of the sentencing grid under which he was sentenced, and his sentence was subject to unconstitutional constraint under *Alleyne* and *Lockridge*. *Lockridge*, 498 Mich at 395. Defendant is therefore entitled to a remand for determination of whether his sentence was appropriate. *Id*.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that he was deprived of his constitutional right to effective assistance of counsel. Again, we agree in part and disagree in part, but find that defense counsel's errors do not entitle defendant to additional relief.

Defendant failed to preserve this issue by bringing a timely motion for a new trial or a *Ginther*[1] hearing with the lower court. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Our review of unpreserved ineffective assistance of counsel claims is limited to mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). "Whether a person has been denied effective assistance of counsel is a mixed question of law and fact." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004) quoting *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2000). A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo. *Matuszak*, 263 Mich App at 48.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-11-

The right to effective assistance of counsel during a criminal trial is guaranteed by both the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. For a new trial based on ineffective assistance of counsel, defendant must show that "(1) that defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that defense counsel's deficient performance so prejudiced the defendant that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Fonville*, 291 Mich App 363, 382; 804 NW2d 878 (2011), citing *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Defense counsel's performance must be measured against an objective standard of reasonableness. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).. "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). Here, defendant claims that defense counsel provided ineffective assistance when he (1) failed to call two witnesses as requested by defendant, (2) failed to pursue additional lines of questioning with trial witnesses as requested by defendant, and (3) failed to object to the aforementioned guidelines errors at sentencing.

### A. FAILURE TO CALL WITNESSES AND PURSUE ADDITIONAL LINES OF QUESTIONING

Defendant has failed to show that defense counsel's failure to call two additional witnesses constituted ineffective assistance of counsel. Defendant argues that trial counsel was ineffective for neglecting to call two additional witnesses: (1) Davis, who pleaded guilty to the charged crimes three years earlier, and (2) Taniesha Saffold, who is described by defendant in his brief on appeal as an additional alibi witness. Additionally, he argues that he was deprived of effective assistance when defense counsel neglected to pursue additional lines of questioning with Humphrey and his mother, who had been called as an alibi witness. Defendant's claims fail for several reasons.

First, defendant has failed to overcome the presumption that decisions regarding what evidence to present and whether to call or question witnesses are matters of trial strategy. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (internal citations and quotations omitted). Because the issue is unpreserved, the Court's determination of whether defendant has met the heavy burden required to overcome that presumption must be supported by facts apparent on the record. *Davis*, 250 Mich App at 368. Here, the record fails to support defendant's claim because defendant has not made an offer of proof regarding the substance of any favorable testimony either witness could have offered. Indeed, defendant does not even speculate in his appellate brief as to what, exactly, these witnesses would have testified to had they appeared at trial. Further, the record provides no proof that trial counsel failed to explore the potential of these witnesses' testimony, simply making the objectively reasonable strategic decision not to present it. Therefore, defendant has failed to overcome the presumption that his counsel employed effective trial strategy. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003).

Additionally, "the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Dixon*, 263 Mich App at 398. A substantial defense is one that might have made a difference in the outcome of the trial. *People v*

*Kelly*, 186 Mich App 524, 526-527; 465 NW2d 569 (1990). Defendant claims that Saffold's testimony would have supported an alibi defense, and that based on the prosecutor's challenge to his mother's testimony, "an additional alibi witness certainly could have benefitted [defendant's] defense in this case." But the test is not whether an additional witness might "benefit" defendant or his bolster the credibility of his defense theory. The test is whether defendant was deprived of a substantial defense. This Court has held that a defendant cannot be deprived of a substantial defense if he was able to assert his offered theory of defense at trial, even if he was unable to call a witness to testify in support of that theory because of counsel's action. *Dixon*, 263 Mich App at 398. There is no indication that Saffold's testimony would have changed the outcome at trial. The jury was aware of defendant's alibi defense and chose to reject it. The fact that defendant's chosen defense theory was unsuccessful does not render defense counsel's assistance ineffective.

### B. FAILURE TO OBJECT AT SENTENCING

Although defendant's claim for ineffective assistance of counsel at trial fails, his claim for ineffective assistance of counsel at sentencing has merit.

As previously discussed, the trial court properly assessed OV 9, OV 10, and OV 13. Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). Because defendant failed to show error in the trial court's assessment of these three OVs, his argument that he was denied effective assistance of counsel when defense counsel failed to object to the trial court's assessment of each offense variable at sentencing must also fail.

However, defense counsel failed to object to the trial court's assessment of both PRV 4 and PRV 6. This failure fell below an objective standard of reasonableness. A reasonably competent attorney should have discovered that the number of prior juvenile adjudications and defendant's relationship with the criminal justice system were erroneously based on an offense that occurred more than a year after the sentencing offense. Defendant's sentencing guidelines range should have been 108 to 180 months, rather than 126 to 210 months. The defense attorney's failure to argue the proper assessment of sentencing guidelines also satisfies the prejudice prong of the ineffective assistance of counsel test. *Glover v United States*, 531 US 198, 199-200; 121 S Ct 696; 148 L Ed 2d 604 (2001).

Defense counsel's errors do not entitle defendant to additional relief. When an ineffective assistance of counsel claim is based on errors made at sentencing, the appropriate remedy is a remand for resentencing within the proper sentencing guidelines range. See *People v Whitfield*, 214 Mich App 348, 354; 543 NW2d 347 (1995) (explaining that if ineffective assistance of counsel is established, the remedy must be tailored to the injury suffered). As previously noted, defendant is entitled to resentencing in light of the inaccurate assessment of his sentencing guidelines and the Supreme Court's *Lockridge* decision. Thus, even though defendant's ineffective assistance of counsel claim has merit, he is not entitled to additional relief on this issue.

We affirm defendant's convictions, but remand for further proceedings consistent with

this opinion.  We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Joel P. Hoekstra
/s/ Deborah A. Servitto